State ex rel. Jones v. Froehlich, 115 Wis. 32.

THE STATE EX REL. JONES and others, Respondents, vs. FROEHLICH, Secretary of State, Appellant.

*May 16—June 19, 1902.*

*Constitutional law: "Works of internal improvement:" Construction by state: Levees: Protection to life: Police power.*

1. The construction and strengthening of a levee system to restrain the waters of the Wisconsin river, as provided for in ch. 282, Laws of 1901, is a "work of internal improvement" within the meaning of sec. 10, art. VIII, Const., prohibiting the state from contracting any debt for, or being a party in carrying on, such works.
2. The fact that levees at the place in question might incidentally avert possible peril to life cannot make them other than works of internal improvement, nor can the declaration of such a purpose in the title of the act be any more effective to that end.
3. An act which the constitution clearly prohibits is beyond the power of the legislature, however proper it might be as a police regulation but for such prohibition.

APPEAL from a judgment of the circuit court for Columbia county: B. F. DUNWIDDIE, Judge. *Reversed.*

By ch. 282, Laws of 1901, there was appropriated from the general fund an amount not exceeding $20,000, "for the

purpose of constructing and strengthening the levee system already existing in the vicinity of Portage on the Wisconsin river in Columbia and Sauk counties, Wisconsin." A commission appointed by the governor was created to have charge of such work, "in such manner as, in their judgment, will best protect said city and vicinity from the overflow of the Wisconsin river." Said commission was to audit and certify the bills thereof, which were to be paid on the approval of the governor. The municipalities in which situated were required to procure the necessary right of way without expense to the state. The commission, having been appointed, incurred a certain bill for surveying, duly audited and certified the same, and it was approved by the governor. The secretary of state, however, refused to draw and issue warrants on the sole ground that the legislation is void, whereupon the commissioners, as relators, brought *mandamus* proceedings to coerce the issue of such warrants.

The petition alleges, as inducement to the legislation, that in the vicinity of Portage the Wisconsin river has in many places low banks, frequently overflowed at times of high water, though for the most part the country is cultivated and improved; that certain natural watercourses run through said low territory, emptying into the Fox river, which at low-water stage is about eight feet below the level of the Wisconsin, the waters of which latter river, at times of unusually high water, rise to a level twenty feet above the level of the waters of the Fox; that about 1850 a canal was constructed, under the authority of the state, connecting the Fox and the Wisconsin at the city of Portage, and that the same is now owned and controlled by the United States; that in 1861 the town of Lewiston, from the proceeds of swamp lands, erected a small dike, which was in part swept away in 1880 and 1881; that in 1882, and subsequently, levees have been constructed from the proceeds of swamp lands and moneys appropriated by the United States government, and

by private aid and subscriptions, and appropriations by the city of Portage and certain towns; that they are inadequate and incomplete, and have been at many times and different places broken through. A somewhat glowing picture is painted of the possibility of the breaking through of the waters of the Wisconsin, the rush thereof across to the Fox and down its valley, so that "great loss of life and immense and incalculable destruction of property throughout the whole Fox River valley, and covering a distance of one hundred miles in length and several miles in width, might probably ensue." It is also asserted that the construction of levees, which can be accomplished with the moneys appropriated by the act in question, would protect the lives and property of the citizens of the state from the dangers portrayed in the petition.

To this petition, and the alternative writ based thereon, the attorney general, as attorney for the state and for the secretary of state, entered a general demurrer, which being overruled, and he declaring that he had no desire to make any return controverting the facts of the petition, judgment was entered of peremptory *mandamus,* commanding the secretary of state to draw and issue warrants as prayed, from which judgment the secretary of state brings this appeal.

The *Attorney General,* for the appellant, to the point that all works within a state by which the public is supposed to be benefited, such as improving highways, channels of travel and commerce, in certain cases erecting water grist-mills, railroad improvements, turnpikes, canals, public reservoirs for irrigation, waterworks, levees, sewers, ice plants, and any and all works and enterprises not objects of private concern alone, but of a general public nature, are included within the term "internal improvement," cited *Union Pacific R. Co. v. Colfax Co.* 4 Neb. 456; *Wetumpka v. Winter,* 29 Ala. 660; *Traver v. Merrick Co.* 14 Neb. 333; *Leavenworth Co. v.*

State ex rel. Jones v. Froehlich, 115 Wis. 32.

*Miller,* 7 Kan. 479; *West Virginia T. Co. v. Volcanic O. &
C. Co.* 5 W. Va. 387; *Yesler v. Seattle,* 1 Wash. 311; *Wilcox
v. Paddock,* 65 Mich. 23; *In re Senate Resolution,* 12 Colo.
287; 25 Am. & Eng. Ency. of Law, 91, note 4.

For the respondents there was a brief by *H. W. Chynoweth*
and *W.·S. Stroud,* and oral argument by *Mr. Chynoweth.*
To the point that the act is valid as a legitimate exercise of
the police power—a power "which is outside and, in a sense,
above the constitution," they cited *Chicago, M. & St. P. R.
Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118; *Beer Co. v.
Mass.* 97 U. S. 25; *State ex rel. Kellogg v. Currens,* 111 Wis.
431, 87 N. W. 561; *Priewe v. Wis. State L. & I. Co.* 93 Wis.
534–551; *Priewe v. Wis. State L. & I. Co.* 103 Wis. 537,
548, 549; *Sessions v. Crunkilton,* 20 Ohio St. 349; *State ex
rel. Baltzell v. Stewart,* 74 Wis. 628, 43 N. W. 947; *Bitten-
haus v. Johnston,* 92 Wis. 588; *Wilcox v. Hemming,* 58 Wis.
144, 150; *Houston v. State,* 98 Wis. 486; *Donnelly v.
Decker,* 58 Wis. 461, 468, 469, 472; *Bryant v. Robbins,* 70
Wis. 258, 262; *Hagar v. Reclamation Dist.* 111 U. S. 701;
*Green v. Swift,* 47 Cal. 536; *Lawton v. Steele,* 119 N. Y.
226; *Barbier v. Connolly,* 113 U. S. 31; *Wilcox v. Paddock,*
65 Mich. 23, 31 N. W. 609.

DODGE, J.   This case presents for consideration and decis-
ion, not the inherent limits of the general power of appro-
priation of public moneys conferred upon the legislature in
the grant of the legislative power, nor the inherent limits of
the general power to provide for good government of the
state, for the protection of the "lives, limbs, health, comfort,
good order, morals, peace, and safety of society" (*State v.
Heinemann,* 80 Wis. 253, 49 N. W. 818), called the "police
power," but, instead, presents the question whether, waiving
discussion of the extent of such powers as a general proposi-
tion, the legislature is expressly forbidden to enact legislation
such as that before us.   The prohibition relied on is sec. 10,

art. VIII, of the constitution: "The state shall never con-
tract any debt for works of internal improvement, or be a
party in carrying on such works." That by the appropriation
of money, to be expended by a state commission in certain
work, the state is made "a party in carrying on such work,"
cannot be doubted. Indeed, that is not questioned, but only
whether the construction of the proposed system of levees is
a work of "internal improvement," within the meaning of
this constitutional inhibition. The words themselves are
capable of including substantially every act within the scope
of governmental activity which changes or modifies physical
conditions within the limits of the commonwealth; but, as
the purpose of the constitution was to form a government
(preamble), we must presume that these words were used in
sufficiently limited sense to permit the accomplishment of
that fundamental purpose, at least to a reasonable extent.
That some limitation of the broad meaning was intended has
been recognized by all branches of the government and by
the people, in the unchallenged provisions for state capitol,
university, schools for blind, deaf, and feeble-minded, hos-
pitals, penitentiaries, and the like, and for extensive works
in improvement of the grounds appurtenant thereto. On the
other hand, we cannot doubt the use of these words in a sense
to exclude works which, but for the prohibition, might have
been within the legitimate field of state government,—works
having at least some measure of public and governmental
purpose,—else the prohibition would have been needless.

The history of the federal and state governments during
the quarter century preceding our constitutional convention
seems to throw much light on the reason for the presence of
this section in our constitution, and on the meaning of the
words used therein. From about 1820 there had been vigor-
ous debate and partisan difference over the propriety of a
federal policy of construction of "internal improvements"
within the several states, among the concrete illustrations of

which toll roads and canals were most prominent; but other facilities of commerce and navigation, such as improvements to harbors and navigable streams, were present. Several of the states (notably, New York, with its Erie Canal) had undertaken similar works (some of them with great success) in development of their resources, settlement of their territory, and promotion of prosperity for their citizens, as also even in promise of actual profit to the state treasury from operation of the land and water highways, which had come to include steam railroads. In 1835, when the state of Michigan was carved out from territory of which Wisconsin was also a part, popular sentiment was enthusiastically favorable to governmental activity in this direction, and the new state government was commanded:

"Internal improvements shall be encouraged by the government of this state; and it shall be the duty of the legislature as soon as may be, to make provision by law for ascertaining the proper objects of improvements, in relation to roads, canals, and navigable waters." Const. Mich. 1835, art. XII, § 3; American Commonwealths (Mich., Cooley) p. 280.

This behest was promptly and vehemently obeyed. Very shortly thereafter the bubble hope of direct profit to the state treasury from the governmental ownership and operation of such enterprises collapsed in the blast of one of those greatest of educators in political economy,—a financial panic; and, in the ten years intervening before our own constitutional discussions, the pendulum of popular sentiment had swung to the extreme of opposition to a policy such as Michigan had first adopted. In 1846 the first constitutional convention of Wisconsin included an article as follows (Journal of Convention, p. 219): "This state shall encourage internal improvements by individuals, associations and corporations, but shall not carry on, or be a party in carrying on, any work of internal improvement;" the words "by individuals, associations and corporations" having been in-

serted in course of the deliberations. Though the constitution was defeated by the people, this section met with great and general approval. It was said by Mr. Estabrook to have been "as the precious jewel in the head of the toad." In the convention of 1847, which framed the present constitution, the clause from the former which directed encouragement of internal improvements by private enterprise was at first reported, but afterward dropped out, and that prohibiting the incurring of any indebtedness therefor was inserted. The debates make entirely clear, however, that the choice made was between the policy of permitting governmental construction of "internal improvements," and that of leaving them to come by private enterprise. The same choice was obvious in Michigan, when in 1850 the people reversed the policy commanded by the constitution of 1835, and adopted a prohibitory section substantially like our own. Nowhere in the discussions, however, can be found anything in denial of the desirability to the community of the existence of internal improvements.

There cannot be doubt that this quarter century of vehement discussion had produced a fairly definite conception of what had come to be designated "internal improvements," which either the government was to undertake, or was to leave to private enterprise, according as one policy or the other prevailed. We think it clear that such conception included those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to the property interests of private promoters, as distinguished from those other things which primarily and preponderantly merely facilitate the essential functions of government. Of course, this line of classification does not exclude possibility that the dominant characteristics of one class may be present in illustrations of the other. A toll-earning canal which gathers spreading waters within its banks may promote public health, as also may a drainage

system undertaken for improvement of the lands of those who construct it. Improvement of the grounds of a state institution may improve access to, and enhance the value of, private property. But in each case the dominant purpose is obvious, and therefore the classification along the line of distinction above stated.

The decided cases generally in their facts support the foregoing conception and distinction, although not always stating it accurately. Thus, in *Rippe v. Becker*, 56 Minn. 100, 57 N. W. 331, in holding that a statute authorizing the state railway and warehouse commission to erect and run elevators infringed the constitutional provision, the court overruled a contention that it merely facilitated a legitimate police purpose of regulating the weighing and storing of grain; also that "internal improvements" meant only channels of travel and commerce. The first contention was overruled on the ground that building an elevator could have no relation to police regulation of weighing and storing grain,—a position to which we should hesitate to assent. A more conclusive answer to the police-power argument would obviously have been that if the work was one of internal improvement, within the constitutional meaning, it was forbidden, although it might facilitate execution of a police power and purpose. In disposing of the latter contention (that works of internal improvement included only means of travel and transportation), the court said (MITCHELL, J.; 56 Minn. 117, 57 N. W. 335), that it included

" 'any kind of work that is deemed important enough for the state to construct,' except, of course, as indicated in *Leavenworth Co. v. Miller,* 7 Kan. 479, 493, those which are used exclusively by and for the state, as a sovereign, in the performance of its governmental functions, such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like; for education, the prevention of crime, charity, and the preservation of public health are all recognized functions of state government."

In other cases the expression "works of internal improve-
ment," contained in constitutional prohibitions similar to
ours, have been declared to include enterprises as follows:
Dredging sand flats from a river (*Ryerson v. Utley*, 16 Mich.
269); deepening and straightening river (*Anderson v. Hill*,
54 Mich. 477, 20 N. W. 549); constructing or operating
street railways (*Attorney General v. Pingree*, 120 Mich. 550,
79 N. W. 814); telephone or telegraph lines (*Northwestern
Tel. Exch. Co. v. C., M. & St. P. R. Co.* 76 Minn. 334, 345,
79 N. W. 315); irrigation reservoirs (*In re Senate Resolu-
tion*, 12 Colo. 287, 21 Pac. 484); roads, highways, bridges,
ferries, streets, sidewalks, pavements, wharves, levees, drains,
waterworks, gas works (*obiter; Leavenworth Co. v. Miller*,
7 Kan. 479, 493); levees (*Alcorn v. Hamer*, 38 Miss. 652);
improvement of Fox river (*Sloan v. State*, 51 Wis. 623, 632,
8 N. W. 393); levees and drains (*State ex rel. Douglas v.
Haslings*, 11 Wis. 448, 453). It also appears by the rela-
tion in this case that the original construction of the system
of levees, to which those now contemplated are to be supple-
mentary, was done both by this state and by the United
States as a work of internal improvement, and by the munici-
palities for reclamation and improvement of property. See
ch. 213, Laws of 1873; ch. 434, Laws of 1889; and *Barden
v. Portage*, 79 Wis. 126, 132, 48 N. W. 210.

In the light of the historical situation surrounding the
framing of our constitution, and of the construction, both
practical and judicial, since given, we cannot doubt that,
*prima facie*, levees or dikes to restrain the waters of a navi-
gable river are works of internal improvement, within the
meaning of the prohibitory section invoked by the attorney
general; and that, too, whether the main purpose be promo-
tion of navigability, creation of water power, or reclamation
of adjoining lands. In any of these there is enough of
pecuniary benefit to warrant belief in the possibility, at least,
that they may be undertaken by private enterprise or local

associations. Indeed, a part, at least, of the system which the act of 1901 proposes to construct and strengthen, was the result of the private enterprise of the Green Bay & Mississippi Canal Company, subsequently taken over by the United States. On the other hand, even though there be some slight measure of general governmental purpose likely to be accomplished by such structures, it is so indirect and relatively so slight that it cannot take the work out of the category to which it so obviously belongs. Railway and toll-road building is forbidden to the state, yet each facilitates the moving of militia and the transportation of supplies for the state institutions. Removal of dangerous rapids from a navigable river would tend to protect life, yet the authorities hold it a prohibited internal improvement, no matter how fully the legislature may have been impressed with the desirability of the improvement for the life-saving purpose. For the same reason the fact that levees at the place in question might incidentally avert possible peril to life cannot make them other than works of internal improvement, nor can the declaration of such a purpose in the title of the act be any more effective to that end.

At this point the relator presents the argument that in protection of life and property, or otherwise, there may be found a public purpose in the construction of the proposed levees, whereby they are brought within the police power of the legislature. This may well be conceded *arguendo*, without changing the result. Important public and general interests may be, doubtless are, subserved by railroads, canals, street railways, and telegraphs; else the state's right of eminent domain could not be conferred in their aid. But that fact does not prevent them from being works of internal improvement, forbidden to the general state government. It is on the ground that such works do serve a public purpose, and are within the ordinary police powers conferred by the general vesting of legislative power, that it has been held that

the legislature may delegate to counties and municipalities authority to aid them by loans of credit. *Bushnell v. Beloit,* 10 Wis. 195; *Rogan v. Watertown,* 30 Wis. 259. But that result is reached only because the prohibition contained in sec. 10, art. VIII, of the constitution, applies only to the general state government, and not to the minor political divisions. Concede the state government has the police power and that such works fall within it; nevertheless the state is prohibited from exercising that power by means of works of internal improvements. The police power has been wittily defined as the power to pass unconstitutional laws, and some utterances of courts have seemed to justify such conception. It is nevertheless erroneous. An act which the constitution clearly prohibits is beyond the power of the legislature, however proper it might be as a police regulation but for such prohibition. Sectarian instruction cannot be given in public schools, however promotive of public morals the legislature may deem it. *State ex rel. Weiss v. District Board,* 76 Wis. 177, 44 N. W. 967. No law impairing the obligation of contracts may be enacted, however essential to the peace of the community. *Cornell v. Hichens,* 11 Wis. 353. The full extent to which courts may go in their construction is to recognize that constitutions are adopted for the purpose of establishing government, to which end some measure of police power is essential, and that a construction of any provision which would wholly prevent the accomplishment of that purpose is to be presumed against, if any other reasonable one can be found which is consistent with the existence of government. It is upon this ground that this and other courts have ascribed a limited meaning to the words "internal improvements," but, after finding what that meaning is, we cannot sustain the state government in being a party to them without nullifying the behests of the sovereign people, pronounced in the highest form of written law. Being convinced, as already stated, that their true meaning is such as to include the work

authorized by ch. 282, Laws of 1901, we must hold that the legislature was forbidden to enact such chapter into law, and that the secretary of state is neither required nor empowered to issue warrants for expenses incurred under it.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the proceedings.