DAUGHERTY v. THOMAS.

1. AUTOMOBILES — MOTOR VEHICLE LAW — OWNER — WORDS AND PHRASES—NEGLIGENCE.
   The phrase "owner of a motor vehicle" as employed in subd. 3, § 10, Act No. 318, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 2496, subd. 3), creating a liability in favor of persons injured by negligent operation of the machine, refers to the proprietor rather than the person in charge or control thereof, and creates a liability broader than the common law affords.

2. SAME—LARCENY OF AUTOMOBILE—LIABILITY.
   In providing that the owner should not be held liable in case the vehicle shall have been stolen, the legislature did not exclude from the operation of the statute an owner whose car had been taken without intent to steal it, as defined by Act No. 33, Pub. Acts 1909, and it was the intent of the legislature that the owner should remain liable if his car was taken without his authority and without any intent to steal it.

3. CONSTITUTIONAL LAW — DUE PROCESS — MOTOR VEHICLE LAW.
It was beyond the constitutional authority of the legislature to render the owner of an automobile liable for negligent operation of the car by any person who obtains possession of it without his consent and without fault on his part, such as mere trespassers; and subd. 3, § 10, Act No. 318, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 2496, subd. 3), is accordingly unconstitutional and invalid, as depriving such owner of his property without due process of law.

4. SAME.
The term property is used in a broad sense in the constitutional guaranty forbidding the deprivation of property without due process of law, and has received a liberal construction analagous in spirit to that applied to "life and liberty." All rights to the use, title, and possession of property are held subject to the right of the legislature to control them according to the established principles of our jurisprudence so far as may be necessary for the public welfare; the only limitations upon the legislative power being found in specific and applicable constitutional restrictions.

Case-made from the superior court of Grand Rapids; Stuart, J. Submitted January 28, 1913. (Docket No. 45.) Decided March 20, 1913.

Case by Nina L. Daugherty against William S. Thomas, Claude H. Gress, Albert G. Williams, James E. Austin, and Walter S. Austin, for personal injuries. Judgment for plaintiff. Defendant Thomas brings error. Reversed. New trial denied.

*Colin P. Campbell*, for appellant Thomas.

*Smedley, Linsey & Lillie*, for appellee.

STONE, J. This is an action on the case to recover damages against the appellant and other defendants for injuries sustained by the plaintiff, who was struck and injured, on one of the streets of Grand Rapids, by an automobile, the property of the defendant William S. Thomas. It appears undisputed that prior to the 4th day of August, 1910, the defendant William S. Thomas was the owner

of an automobile; and the defendants James E. Austin and Walter S. Austin were the proprietors and owners of an automobile factory. The automobile in question had been, by the defendant William S. Thomas, left in the shop of the Austins for repairs. The defendants Claude H. Gress and Albert G. Williams worked in this shop for the defendants Austin.

It appears that on the 4th day of August, 1910, defendant Gress took the machine out of the shop in order to test it and see whether or not it had been properly and sufficiently repaired. Defendant Williams accompanied defendant Gress. After they had gone several blocks, defendant Williams took the steering gear and the two defendants proceeded south on Lafayette street. On the south side of State street was a crossing or crosswalk across Lafayette street, on which crosswalk was the plaintiff. The machine, in passing across State street, got from under the control of defendants Gress and Williams. Both scrambled to get hold of the steering gear, forgot to release the transmission so as to stop the car, and so struck and injured the plaintiff.

There was no question in the case that defendants Gress and Williams were not employés of defendant Thomas, and there was no claim that said defendants Gress and Williams were employés of defendant Thomas. There was no question that the machine had been left in Austins' factory for repairs, and that the taking of it out for testing was entirely without defendant Thomas' knowledge or direction or consent, and that defendant Thomas was made a party to this suit solely because of section 10, subd. 3, Act No. 318, of the Public Acts of 1909. Verdict and judgment were for plaintiff against all of the defendants. Defendant Thomas has appealed.

The only question raised in the case is as to defendant Thomas' liability under that statute; and this question is raised by exceptions to the refusal of the court to direct a verdict in favor of defendant Thomas, and in the court's refusal to charge the jury that defendant Thomas was not

liable, upon which exceptions error is duly assigned. The points discussed by counsel were: (1) As to the construction of said subdivision 3; and (2) if said subdivision is so construed as to include defendant Thomas, then as to its validity under the Constitution of Michigan, art. 2, § 16, and the fourteenth amendment to the Federal Constitution. These provisions, although familiar, are inserted here. The portion of section 16, art. 2, of the Michigan Constitution here invoked, reads as follows:

"No person shall * * * be deprived of life, liberty or property, without due process of law."

That portion of the fourteenth amendment to the Federal Constitution here invoked reads as follows:

"Nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Subdivision 3 of section 10, Act No. 318 of the Public Acts of 1909, is as follows:

" Liability of Owners.—The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation by any person of such motor vehicle, whether such negligence consists in violations of the provision of a statute of this State or in the failure to observe such ordinary care in such operation as the rules of the common law require; but such owner shall not be so liable in case such motor vehicle shall have been stolen."

1. It is the claim of the appellant Thomas that the act in question does not intend by the term "owner" the proprietor of the vehicle only, but intends by the term "owner" the person who is mediately or immediately in charge thereof. In passing upon this question, it is necessary for us to examine the other parts of this act. Section 1 defines the term "owner" as follows:

"The term 'owner' shall also include any person, firm, association or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days."

Subdivision 1, § 2, of the act provides that every owner of a motor vehicle which shall be operated or driven upon the public highways of this State shall cause to be filed in the office of the secretary of State a brief description of the motor vehicle to be registered, etc., and the name, residence, and business address of the owner of such motor vehicle, and the name of the county in which he resides. Subdivision 3, § 2, provides for the issue of a number plate to the owner, and that, in the event of the loss of the number plate, the owner of the registered motor vehicle may obtain a duplicate. Section 5 provides that the act shall not apply to a motor vehicle owned by a non-resident of the State, provided the owner thereof shall have complied with the provisions of the law of the State of his residence, etc.

We cannot agree with appellant that the legislature meant by the word "owner" to include a person who might be merely either mediately or immediately in possession of the vehicle. It was not the intent of the legislature that any other than the real owner of the automobile should have the same registered as required by law, excepting any person, firm, etc., renting a motor vehicle, or having exclusive use thereof under a lease or otherwise for a period greater than 30 days.

Before the passage of this act, a person who caused an injury to another by negligent operation of an automobile upon a public highway became liable to the person so injured. If the word "owner" only means the person mediately or immediately in control of the automobile, then no new rule of law was created by this statute, and the common-law rule would not be changed, and the injured person would under the act have no greater remedy than before. We hardly need quote authorities to the effect that the owner of property is one who has dominion over it, and who has the right to enjoy and do with it as he pleases, unless he be prevented by some contract or law which restrains his right. We are of the opinion that the

term " owner," as used in the statute, means, as applied in this case, the defendant William S. Thomas.

2. This brings us to the consideration of the important question in this case, whether subdivision 3 of section 10 of the act under consideration is void as being a deprivation of property without due process of law, and of the equal protection of the laws within the fourteenth amendment to the Federal Constitution, and the provisions of article 2, § 16, of the Constitution of this State. We are met at the threshold of this question with the claim of the plaintiff that the validity of this portion of the act in question has been sustained by this court in the case of *Johnson* v. *Sergeant*, 168 Mich. 444 (134 N. W. 468). That case was before this court upon demurrer to the declaration. In that suit there were two defendants Louis Sergeant, the owner, and George Sergeant, the person in charge of and driving and operating the motor vehicle. The declaration contained the allegation that the said George Sergeant had not stolen said motor vehicle, nor had any other person stolen it. It is true that each of the four counts of the declaration in that case asserted the liability of the defendant Louis Sergeant under the provisions of the statute above quoted. It is, however, alleged in the fourth count of the declaration that the owner, Louis Sergeant,—

" Did on the day aforesaid permit, allow, and place into the hands of said George Sergeant, and allowed said George Sergeant to run and operate, said motor vehicle along the public streets," etc.

From aught that appeared in the declaration in that case, the machine was being operated at least by the permission, if not under the direction, of the owner. The precise question presented in this case was not there before the court, for it is developed and appears in the instant case, and is not disputed, that the machine was being used by the servants of defendants Austin, and without the permission, knowledge, or consent of the defendant Thomas.

In *Johnson* v. *Sergeant, supra,* the main discussion is confined to the question whether the title of the act is sufficiently broad to cover the provision in question; and it was held that, as the word "regulate" was used in the title, it was broad enough to embrace this provision. It is true this court did use the following language:

"The legislature has gone a long way in this statute in fixing the liability of the owner, even though he may not be in fault. We do not think, however, it can be said to have exceeded its authority under the police power."

Before the act of 1909 went into effect this court had passed upon the duty of the owners or drivers of automobiles in a number of cases.

In *Hartley* v. *Miller*, 165 Mich. 115 (130 N. W. 336, 33 L. R. A. [N. S.] 81), the general proposition as to the responsibility at common law for a tort was stated in the language of Andrews, J., in *King* v. *Railroad Co.*, 66 N. Y. 184 (23 Am. Rep. 37), as follows:

"Where one person has sustained an injury from the negligence of another, he must, in general, proceed against him by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant while engaged in his master's business, the person sustaining the injury may disregard the immediate author of the mischief and hold the master responsible for the damages sustained."

Referring to *Wyllie* v. *Palmer*, 137 N. Y. 248 (33 N. E. 381, 19 L. R. A. 285), we said that the doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong at the time, and in respect to the very transaction out of which the injury arose.

It is important to note that the last clause of subdivision 3 of section 10, above quoted, is as follows:

"But such owner shall not be so liable in case such motor vehicle shall have been stolen."

There is no claim in this case that the automobile in

question had been stolen by the defendants having it in charge. The word "stolen" can have but one meaning when used in connection with personal property, as in this case. To steal is to commit larceny. The word "steal" has a uniform signification when used in connection with personal property, and in common, as well as in legal, parlance means, the felonious taking and carrying away of the personal goods of another. See the numerous cases cited in volume 7 of Words and Phrases, at, page 6652 *et seq.*

It is significant that, at the same session of the legislature in which the act in question was passed, there was also enacted Act No. 33, entitled:

"An act to prohibit the unauthorized taking or using of automobiles or other motor vehicles by drivers or caretakers thereof, or by any other person or persons, without intent to steal the same, and to provide a penalty therefor."

The act provides as follows:

"Every person who takes or uses without authority an automobile or other motor vehicle without intent to steal the same, or who shall be a party to such unauthorized taking or using, shall, upon conviction thereof, be punished by imprisonment in the State prison for not more than two years, or by a fine of not more than five hundred dollars. * * * *Provided further*, that the provisions of this act shall be construed to apply to any person or persons employed by the owner of said automobile or other motor vehicle or anyone else, who, by the nature of his employment, shall have the charge of, or the authority to drive said automobile or other motor vehicle if said automobile or other motor vehicle is driven or used without the owner's knowledge or consent."

It cannot be held that the word "stolen," as used in Act No. 318, means to include machines taken in violation of Act No. 33, which makes it a felony to take or use them without authority, "without intent to steal the same." Certainly the word "stolen" cannot be construed to mean "without intent to steal."

We have presented in this case the anomalous condition of the claimed liability of the owner of an automobile, where the same has been taken without intent to steal it, but without the knowledge or consent of the owner, and therefore without any fault or negligence on his part, while the act of the person who took and used the same is made a felony. We have not here the question of the responsibility, be it moral or otherwise, of the owner of an automobile who has placed it in the hands of an irresponsible person to use.

Our attention has been called by appellant to the case of *Camp* v. *Rogers*, 44 Conn. 291. In that case the defendant Rogers was the owner and keeper of a livery stable, and he let a horse and carriage to one Dart for a few hours for pleasure driving, for the use of which Dart was to pay a reasonable compensation. Dart was not in the employ or the agent of Rogers, but hired the horse and carriage in the usual way. While Dart was driving he met the plaintiff's son, who was driving a horse and wagon of the plaintiff and going in an opposite direction. By the carelessness of Dart, who was driving upon the wrong side of the street, one of the shafts of the carriage in which Dart was riding was driven into the breast of the horse driven by the plaintiff's son, in consequence of which the horse died and suit was brought under a statute which provided that:

"Every driver of any vehicle who shall, by neglecting to conform to the preceding section (requiring him to turn to the right on meeting any other vehicle upon the public highway), drive against another vehicle and injure its owner or any other person in it, or the property of any person, * * * shall pay to the party injured treble damages and costs; and shall, if the injury be done designedly, forfeit to the State not more than one hundred dollars. And the owner of such vehicle shall, if the driver is unable to do so, pay the damages provided in this and the preceding section, to be recovered by writ of *scire facias.*"

The suit was brought against Rogers under the provi-

sions of the above statute, and the plaintiff claimed the act to be valid and constitutional. In that case Justice Loomis, speaking for the court, said:

"If the construction which the plaintiff contends should be given to the statute upon which her right to recover must depend, then there can be no case in which the owner of a vehicle would not be liable, not only for the actual damage caused by a violation of the statute on the part of any person driving it, but for the threefold and punitive damages given by the statute against the driver. If the owner of a vehicle should leave it, with his horse attached to it, at a post by the side of the street, and in his absence a thief or trespasser should take it, and by reckless driving damage a horse or carriage that he happened to meet, the owner would be liable. So if one lends his vehicle to a friend, and he again lends it to a stranger, the owner would be liable, not only for any damage done by the stranger in driving it, but even by the servant of the stranger. Indeed, we should have this strange anomaly that, if my neighbor borrows my carriage and is riding in it with his servant, and the latter wilfully neglects to turn to the right and injures a team that he meets, while my neighbor would not be liable as master, because the act of his servant was wilful, I should yet be liable as owner, and that, too, with no right to indemnity from the master. Such a result is in itself so absurd as to show either that the statute ought not to be so construed as to produce it, or that, if this be a correct construction, it is so far void, either as manifestly against natural justice, or as violating that article of the Constitution which forbids the taking away of any person's property 'without due process of law.' If such a law, so construed, were to be held valid, then a law that should by a merely arbitrary rule make one man liable for the debts of another would be valid. Indeed, there is no limit that could be put to the most arbitrary acts of the legislature in making one man liable for the acts of another.

"As to the meaning of the expression 'due process of law,' as used in many of the constitutions of the States of the Union, Cooley, in his Constitutional Limitations, p. 355, says: 'We have met in no judicial decision a statement that embodies more tersely and accurately the correct view

of the principle we are considering than the following from an opinion of Mr. Justice Johnson of the Supreme Court of the United States: "The good sense of mankind has at length settled down to this: That these words were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." ' Again he says (page 358), speaking of the cases where courts of equity order the property of one man to become vested in another: ' In these cases the courts proceed in accordance with " the law of the land," and the right of the one man is divested by way of enforcing a higher and better right in another.' Again he says (page 175): ' The bills of rights in the American Constitutions forbid that parties shall be deprived of property, except by the law of the land; but if the prohibition had been omitted, a legislative enactment to pass one man's property over to another would nevertheless be void.' In *People* v. *Morris,* 13 Wend. [N. Y.] 328, it is said that, ' Vested rights of the citizen are sacred and inviolable against the plenitude of power in the legislative department.' In *Ham* v. *McClaws,* 1 Bay (S. C.), 93, it is laid down that, ' Statutes passed against the plain and obvious principles of common right and common reason are null and void, so far as calculated to operate against those principles;' and in *Morrison* v. *Barksdale,* Harp. [S. C.] 101, that, ' If absurd consequences, or those manifestly against common reason, arise collaterally out of a statute, it is void *pro tanto.*' And see *Welch* v. *Wadsworth,* 30 Conn. 150 [79 Am. Dec. 239]."

In that case, however, the court was able to say that by the term "owner" the legislature intended, not the literal or technical owner, but the person in possession or control, mediately or immediately, of the vehicle, a conclusion which we are not able to reach in the instant case.

Counsel for appellant has also cited the much criticised case of *Ives* v. *Railway Co.,* 201 N. Y. 271 (94 N. E. 431, 34 L. R. A. [N. S.] 162, Ann. Cas. 1912B, 156), and quotes the language of Mr. Justice Werner, beginning with the words:

"When our Constitutions were adopted, it was the law of the land that no man who was without fault or negli-

gence could be held liable in damages for injuries sustained by another."

In that case the constitutional limitations upon the police power are discussed at great length. The instant case is a much stronger case for the defendant than was the *Ives Case*, for in the instant case the relation of master and servant, or employer and employé, is not involved, but the bald proposition is presented that the owner of property can be made liable for the negligence of one not a servant, or occupying a similar relation.

In 28 Cyc. p. 37, it is said:

"Liability for injury by a motor vehicle must be predicated upon some negligent act or omission on the part of the person to be held, or his agent or servant."

In 8 Cyc., at page 1099, in the discussion of constitutional law, it is said:

"But the owner of property, the ordinary use of which is beneficial to the public, cannot be made liable for the negligence of one not a servant, or occupying a similar relation"—citing *Camp* v. *Rogers, supra.*

At page 1094, discussing the question of deprivation of property, it is said:

"The term 'property' is used in a broad sense in the constitutional guaranty forbidding the deprivation of property without due process of law, and has received a liberal construction analogous in spirit to that applied to 'life' and 'liberty.' All rights to the use, title, and possession of private property are held subject to the right of the legislature to control them, according to the established principles of our jurisprudence, so far as may be necessary for the public welfare; the only limitations upon the legislative power being found in specific and applicable constitutional restrictions"—citing numerous State and Federal cases.

In *Ohio, etc., R. Co.* v. *Lackey,* 78 Ill. 55 (20 Am. Rep. 259), it was held that the act of Illinois making railroad companies liable for all expenses of the coroner and his inquest, and the burial of persons who might be killed by

collision, or other accident occurring on such cars, or otherwise, was unconstitutional and void, so far as it attempted to make such companies liable in cases where they had violated no law, or had been guilty of no negligence on their part.    The court said:

"An examination of the section will show that no default, or negligence of any kind, need be established against the railroad company; but they are mulcted in heavy charges if, notwithstanding all their care and caution, a death should occur on one of their cars, no matter how caused, even if by the party's own hand.    Running of trains by these corporations is lawful and of great public benefit.  It is not claimed that the liability attaches for any violation of law, the omission of any duty, or the want of proper care and skill in running their trains.    The penalty is not aimed at anything of this kind.    We say penalty, for it is in the nature of a penalty, and there is a constitutional inhibition against imposing penalties where no law has been violated or duty neglected.    Neither is pretended in this case; nor are they in the contemplation of the statute.·  A passenger on the train dies from sickness.    He is a man of wealth.    Why should his burial expenses be charged to the railroad ?  There is neither reason nor justice in it."

In *Burrows* v. *Transportation Co.*, 106 Mich. 582, at page 603 (64 N. W. 508, 29 L. R. A. 468), this court said:

"The courts cannot, however, declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights guaranteed or protected by the Constitution.  Cooley, Const. Lim. (6th Ed.) p. 197.  The learned author says further, at page 200:  ' The rule of law upon this subject appears to be that, except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case.    The courts are not the guardians of the rights of the people of the State, except as those rights are secured by some constitutional provision which comes within the judicial cognizance.'"

In Volume 1 of Tiedeman on State and Federal Control

of Persons and Property, beginning at page 8, and con-
cluding with page 19, that author discusses the legal lim-
itations upon police power. It is there stated that, when-
ever an act of the legislature contravenes a constitutional
provision, it is void, and it is the duty of the courts so to
declare it and refuse to enforce it. The author then dis-
cusses the question of the power of the judiciary to declare
an act of the legislature void because it violates some ab-
stract rule of justice when there is no constitutional pro-
hibition. With that question we are not concerned
farther than to remark that the author holds that in such
a case the regulation to be sustained must fall within the
enforcement of the legal maxim, "Use your own property
in such a manner as not to injure that of another." The
author says:

"Powers which can only be justified on this specific
ground (that they are police regulations), and which
would otherwise be clearly prohibited by the Constitution,
can be such only as are so clearly necessary to the safety,
comfort, and well-being of society, or so imperatively re-
quired by the public necessity, as to lead to the rational
and satisfactory conclusion that the framers of the Con-
stitution could not, as men of ordinary prudence and fore-
sight, have intended to prohibit their exercise in the par-
ticular case, notwithstanding the language of the prohibi-
tion would otherwise include it"—citing Christiancy, J.,
in *People* v. *Plank Road Co.*, 9 Mich. 285. "And in all
such cases it is the duty of the courts to determine whether
the regulation is a reasonable exercise of a power which is
generally prohibited by the Constitution. 'It is the prov-
ince of the lawmaking power to determine when the ex-
igency exists for calling into exercise the police power of
the State; but what are the subjects of its exercise is
clearly a judicial question.'" *Lake View* v. *Cemetery*,
70 Ill. 192 (22 Am. Rep. 71).

"Chief Justice Marshall said in *Marbury* v. *Madison*,
1 Cranch (U. S.), 137: 'The courts are not bound by mere
forms, nor are they to be misled by mere pretenses. They
are at liberty—indeed they are under a solemn duty—to
look at the substance of things whenever they enter upon
the inquiry whether the legislature had transcended the lim•

its of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relations to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the court to so adjudge, and thereby give effect to the Constitution.' The principal constitutional limitations, which are designed to protect private rights, against the arbitrary exercise of governmental power, and which therefore operate to limit and restrain the exercise of police power, are the following: * * * (8) No person shall be * * * deprived of life, liberty, or property, without due process of law. * * * (12) Nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

For an able discussion of the limitations of the police power, in which quotations are made from Cooley's Constitutional Limitations, and other text-writers, and many decisions, see *State* v. *Kreutzberg*, 114 Wis. 530 (90 N. W. 1098, 58 L. R. A. 748, 91 Am. St. Rep. 934; *State* v. *Froehlich*, 115 Wis. 32 (91 N. W. 115, 58 L. R. A. 757, 95 Am. St. Rep. 894). In the case last cited the court says:

"Concede the State government has the police power, and that such works fall within it; nevertheless the State is prohibited from exercising that power by means of works of internal improvements. The police power has been wittily defined as the power to pass unconstitutional laws, and some utterances of courts have seemed to justify such conception. It is nevertheless erroneous. An act which the Constitution clearly prohibits is beyond the power of the legislature, however proper it might be as a police regulation but for such prohibition"—citing cases.

See, also, *State* v. *Redmon*, 134 Wis. 89 (114 N. W. 137, 14 L. R. A. [N. S.] 229, 120 Am. St. Rep. 1003, 15 Am. & Eng. Ann. Cas. 408). In the last cited case Justice Marshall, speaking for the court, said:

"Again this court said, by way of approval of expressions of standard authors and opinions in leading cases,

the police power includes 'all laws for the protection of life, limb, and health, for the quiet of the person, and for the security of property.' 'All persons and property are subjected to all necessary restraints and burdens to secure the general comfort, health, and prosperity of the State.' 'It is co-extensive with self-protection and is not inaptly termed the "law of necessity." It is that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort and welfare of society.' *State* v. *Burdge*, 95 Wis. 390, 398 (70 N. W. 347, 349, 37 L. R. A. 157, 60 Am. St. Rep. 123). These and many other similar phrasings, meaning the same thing, are far from being entirely satisfactory. They are misleading to one who reads them without having in mind the idea that all legislative regulations of human affairs interfering with personal liberty or other private rights, to be legitimate, tested by constitutional limitations, must be reasonably for the public benefit.

"It were better to always say that the police power extends to and permits legislation regulating reasonably matters appertaining to the public welfare, since anything beyond that must necessarily fall at the threshold of some constitutional defense. It is a great power, having more to do with the well-being of society than any other, yet one which, if exercised autocratically, would supersede some of the most cherished principles of constitutional freedom. It may be extended disastrously or restrained and administered beneficially, according as the judiciary shall perform its constitutional functions. Confined within its legitimate field of reasonable regulation, it is essential, as we have heretofore indicated, to the full accomplishment of the purposes of civil government."

The learned judge then proceeds to discuss the question under consideration : *First*, as to whether it was a police regulation; and, *second*, if it be such a regulation, whether it was outside the field of reasonable interference with private rights. After quoting the language of Chief Justice Marshall in *Marbury* v. *Madison, supra,* he then quotes the language of the court in *Re Jacobs*, 98 N. Y. 98 (50 Am. Rep. 636), as follows :

"It matters not that the legislature may in the title to the act, or in its body, declare that it is intended for the

improvement of the public health. Such a declaration does not conclude the courts, and they must yet determine the fact declared and enforce the supreme law."

We refrain for want of space from further quotation from this able opinion. In this connection, it is well for us to refer to our own decisions.

In *People* v. *Smith*, 108 Mich. 527 (66 N. W. 382, 32 L. R. A. 853, 62 Am. St. Rep. 715), referring to certain regulations for the protection of employés, it was said that, if it was a necessary regulation, the law should be sustained; but if an unjust law, it should be annulled. And on page 534 of 108 Mich. (66 N. W. 384, 32 L. R. A. 853, 62 Am. St. Rep. 715), the late Justice HOOKER used the following language:

"If the courts find the plain provisions of the Constitution violated, or if it can be said that the act is not within the rule of necessity, in view of the facts of which judicial notice may be taken, then the act must fall; otherwise it should stand."

It may be laid down as a general proposition that absolute liability, without fault on his part, cannot ordinarily be imposed upon a citizen. It has been held in numerous cases that a statute making a railroad company liable for stock killed, whether the company was negligent or not, and fixing the damages according to a schedule, was to deprive the company of property without due process of law. A similar statute in Alabama was declared not a sustainable exercise of the police power. *Zeigler* v. *Railroad Co.*, 58 Ala. 594; *Birmingham Mineral R. Co.* v. *Parsons*, 100 Ala. 662 (13 South. 602, 27 L. R. A. 263, 46 Am. St. Rep. 92); *Wadsworth* v. *Railway Co.*, 18 Colo. 600 (33 Pac. 515, 23 L. R. A. 812, 36 Am. St. Rep. 309); *Schenck* v. *Railway Co.*, 5 Wyo. 430 (40 Pac. 840); *Jensen* v. *Railway Co.*, 6 Utah, 253 (21 Pac. 994, 4 L. R. A. 724); *Denver, etc., R. Co.* v. *Outcalt*, 2 Colo. App. 395 (31 Pac. 177); *Oregon R. Co.* v. *Smalley*, 1 Wash. 206 (23 Pac. 1008, 22 Am. St. Rep. 143); *Atchi-*

*son, etc., R. Co.* v. *Baty,* 6 Neb. 37 (29 Am. Rep. 356);
*Williams* v. *Railroad Co.,* 2 Mich. 259 (55 Am. Dec. 59).

In the case last cited this court held that the railroad
company was not bound by its charter or principles of the
common law to fence its road for the protection of other
persons' domestic animals. It is true that the general
railroad act introduced a new rule and imposed the duty
of erecting and maintaining fences, and made companies
absolutely liable for injuries which might result from the
neglect of duty. But that is another question. See, also,
*Parson* v. *Russell,* 11 Mich. 113 (83 Am. Dec. 728).

In *Lawton* v. *Steele,* 152 U. S. 137 (14 Sup. Ct. 501),
Justice Brown, after defining in general language the
term ''police power of the State,'' said:

''To justify the State in thus interposing its authority
in behalf of the public, it must appear, *first,* that the
interests of the public generally, as distinguished from
those of a particular class, require such interference; and,
*second,* that the means are reasonably necessary for the
accomplishment of the purpose, and not unduly oppres-
sive upon individuals. The legislature may not, under
the guise of protecting the public interests, arbitrarily
interfere with private business, or impose unusual or un-
necessary restrictions upon lawful occupations. In other
words, its determination as to what is a proper exercise of
police powers is not final or conclusive, but is subject to
the supervision of the courts. Thus an act requiring the
master of a vessel arriving from a foreign port to report
the name, birthplace, and occupation of every passenger,
and the owner of such vessel to give a bond for every
passenger so reported, conditioned to indemnify the State
against any expense for the support of the persons named
for four years thereafter, was held by this court to be in-
defensible as an exercise of the police power, and to be
void as interfering with the right of Congress to regulate
commerce with foreign nations. *Henderson* v. *New
York,* 92 U. S. 259. * * * In *Rockwell* v. *Nearing,*
35 N. Y. 302, an act of the legislature of New York,
which authorized the seizure and sale without judicial
process of all animals found trespassing within private
inclosures was held to be obnoxious to the constitutional

provision that no person should be deprived of his property without due process of law. See, also, *Austin* v. *Murray*, 16 Pick. [Mass.] 121; *Watertown* v. *Mayo*, 109 Mass. 315 [12 Am. Rep. 694]; *Slaughter-House Cases*, 16 Wall. (U. S.) 36; *In re Cheesebrough*, 78 N. Y. 232; *Brown* v. *Perkins*, 12 Gray (Mass.), 89. In all these cases the acts were held to be invalid as involving an unnecessary invasion of the rights of property, and a practical inhibition of certain occupations harmless in themselves, and which might be carried on without detriment to the public interests."

He then proceeds to show that the preservation of game and fish has always been treated as within the proper domain of the police power. See, also, *Commonwealth* v. *Bearse*, 132 Mass. 542 (42 Am. Rep. 450).

In the last cited case Justice Devens, after defining the police power and quoting the language of Chief Justice Shaw in *Commonwealth* v. *Alger*, 7 Cush. (Mass.) 53, 85, said:

" The legislature is largely the judge of its own powers in reference to these matters. If it can be seen, indeed, that the rights of property are invaded under the pretence of a police regulation, it would be our duty to interfere to protect them."

The instant suit is an action on the case sounding in tort. The wrongful injury constitutes the foundation of the plaintiff's right of action; and yet the facts submitted for the purpose of sustaining it show not the least degree of negligence on the part of defendant Thomas. The evidence shows neither a malfeasance, a misfeasance, nor a nonfeasance upon his part. The injury to plaintiff does not warrant the imposition of damages upon one who is not shown to have been blamable in the premises. It has been held, both by this and other courts, that there can be no question of the right of the legislature, in the exercise of the police power, to regulate the driving of automobiles and motor cycles on the public highways of the State; that such machines are capable of being driven, and are apt to be driven at such high rates of speed, and when

not properly driven are so dangerous as to make some regulation necessary for the safety of other persons on the public ways. And the statutes requiring registration and the registered number to be displayed and the rate of speed have been held constitutional as a reasonable exercise of police power. *People* v. *Dow*, 155 Mich. 115 (118 N. W. 745); *Commonwealth* v. *Boyd*, 188 Mass. 79 (74 N. E. 255, 108 Am. St. Rep. 464); *State* v. *Unwin*, 75 N. J. Law, 500 (68 Atl. 110); *People* v. *MacWilliams*, 91 App. Div. (N. Y.) 176 (86 N. Y. Supp. 357).

To hold subdivision 3 of section 10 constitutional is to hold a party absolutely liable for the negligent conduct of another, a mere stranger or a wilful trespasser, no matter how careful or free from negligence he himself has been. We think that the result of such holding would be to take the property of defendant Thomas to pay for the wrongful and negligent act of another person not sustaining to him the relation of servant, agent, or employé. Such a doctrine seems unnatural and repugnant to the provisions of the Constitution here invoked. We are forced to the conclusion that the provisions of this subdivision are not a necessary regulation in the exercise of the police power; that in and by its terms the plain provisions of the Constitution are violated; and the subdivision must be held unconstitutional, and the statutory liability therein asserted, done away with.

And in so far as what we have held conflicts with *Johnson* v. *Sergeant*, the latter case must be overruled. Had this provision of the statute been followed by language indicating that the owner should not be liable in case the automobile or other motor vehicle was taken or used in violation of Act No. 33 of the Public Acts of 1909, the infirmity would have been cured. The remainder of the act seems unobjectionable. It is evident that the general legislative purpose contained in the act may be accomplished with this objectionable provision stricken out, leaving the act "complete in itself and capable of being executed wholly independent of that which is rejected." Cooley's Consti-

tutional Limitations (7th Ed.), pp. 246, 247; *People* v. *Eberle*, 167 Mich. 477, 487 (133 N. W. 519).

It follows, as a necessary conclusion, that the judgment of the superior court as to the defendant William S. Thomas must be reversed, and no new trial granted.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.