STATE ex rel. MARTIN, Attorney General, Petitioner, vs. GIÉSSEL, Director of Budgets and Accounts, Respondent.

*February 20—March 29, 1948.*

364

For the petitioner there were briefs by the *Attorney General,* and *Harold H. Persons* and *Roy G. Tulane,* assistant attorneys

general, and oral argument by *Mr. Persons* and *Mr. Tulane.*
*Clifford G. Mathys* of Madison, for the respondent.

Briefs *amici curiæ* were filed by *Fred R. Wright* of Milwaukee, and by *J. H. Beuscher, Horace. W. Wilkie,* and *Floyd A. Brynelson,* all of Madison.

HUGHES, J. The sole question presented is whether sec. 20.02 (13) (a), Stats., authorizing allotments up to ten per cent of the cost of land, improvements, and dwelling, violates sec. 10 of art. VIII of the Wisconsin constitution, which reads:

> "The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; but whenever grants of land or other property shall have been made to the state, especially dedicated by the grant to particular works of internal improvement, the state may carry on such particular works, and shall devote thereto the avails of such grants, and may pledge or appropriate the revenues derived from such works in aid of their completion. Provided, that the state may appropriate money in the treasury or to be thereafter raised by taxation for the construction or improvement of public highways or the development, improvement and construction of airports or other aeronautical projects. Provided, that the state may appropriate moneys for the purpose of acquiring, preserving and developing the forests of the state; but there shall not be appropriated under the authority of this section in any one year an amount to exceed two-tenths of one mill of the taxable property of the state as determined by the last preceding state assessment."

An expenditure of public funds for a private purpose is unconstitutional. The state recognizes this and starts its argument with the proposition that appropriation of tax moneys for the purpose of providing benefits for veterans in recognition of their service is for a public purpose, citing *Brodhead v. Milwaukee* (1865), 19 Wis. *624; *State ex rel. Atwood v. Johnson* (1919), 170 Wis. 218, 175 N. W. 589; *State ex rel.*

*American Legion 1941 Conv. Corp. v. Smith* (1940), 235 Wis. 443, 293 N. W. 161.

This enactment cannot be considered as providing a bonus to the veteran and justified upon that basis, for if it is a grant to the veteran, it does not treat all equally. Therefore, if it can be legalized at all, it must be on the ground that the legislature, in recognition of the housing shortage, has provided for units to be built for rental purposes and that the program will alleviate the condition which exists, and thus satisfy a public need.

This court, in *Gibson Auto Co. v. Finnegan* (1935), 217 Wis. 401, 406–407, 259 N. W. 420, said:

"In entering upon a consideration of the questions raised upon this appeal, we may appropriately repeat, what has been said many times before, that under our system of government the court is not called upon to consider the economic, social, and political matters dealt with in the act. Whatever conclusion may be reached as the result of our deliberation, it in no way involves the determination by the court of the social value of the objectives sought. Under our constitutional system, in reviewing an act of the legislature, the duties of the court are limited to considering whether or not the act of the legislature contravenes the provisions of the constitution. The duty of the court to do this arises from the fact that the constitution is the supreme law of the state. If the legislature passes an act which is in contravention of the constitution, and a citizen asserts a right under the constitution denied him by the act of the legislature, of necessity the court must determine which controls,—the constitution or the act of the legislature. It cannot determine the rights of parties otherwise. From the beginning the provisions of the constitution have been held to be supreme and therefore controlling."

It would appear almost axiomatic that if housing is a public venture, it constitutes an internal improvement. If it is not a public improvement, then certainly the government could

have no basis for entering into the field, for it must then be private business.

The courts and legislature of Wisconsin have consistently considered activities of this type to be works of internal improvement.

The constitution has been amended from time to time to permit the state to build public highways and airfields and to engage in preserving and re-establishing public forests.

The interpretation of the constitutional restriction upon the state and the reasons therefor were well put in a very early case, *Bushnell v. Beloit* (1860), 10 Wis. *195, *223, *224:

". . . At all events, the natural and rational construction of these restrictive clauses is that they apply to the state in contradistinction to the subdivisions of the state. Otherwise, how would it be possible for our cities and villages to improve their harbors; to pave and grade their streets; to build their bridges; or to do many other things calculated to increase their trade and prosperity, and promote the comfort and welfare of the citizens? This construction derives additional force from a reference to the mischiefs and evils which these prohibitions in the constitution were intended to guard against and prevent. It is well known to every person of common information in respect to the history of this country that at the time our constitution was adopted many of the neighboring states had become almost hopelessly involved in debt, by attempting to carry forward and sustain a general system of internal improvements. The credit of some of the states was ruined, and the public confidence in all greatly impaired.

"It was notorious that these works always cost the state more than they did individuals and private corporations, and were operated at much greater expense. Besides, no system could be devised which would operate alike over the whole state. If the money to carry on internal improvements was raised by general taxation, and there was no other way to raise it, the burdens would fall upon all, while the benefits would enure to a comparatively small portion of the state. And to save the state from the bankruptcy and ruin which had followed in other states in consequence of their embarking in a general

system of internal improvements, and to avoid the unequal taxation inseparable from that policy, the framers of the constitution wisely provided that the state should neither loan its credit to any corporation or be a party to carrying on such works. . . ."

In *State ex rel. Scanlan v. Archibold* (1911), 146 Wis. 363, 370, 131 N. W. 895, the court said:

"The law must be tested as to its constitutionality by its language in the light of such matters as the court will take judicial notice of. *State ex rel. Att'y Gen. v. Cunningham,* 81 Wis. 440, 51 N. W. 724; *Tenement House Dept. v. Moeschen,* 179 N. Y. 325, 72 N. E. 231; *State v. Cantwell,* 179 Mo. 245, 78 S. W. 569."

The state contends that because the housing shortage is of such proportions as to create an emergency, the constitutional prohibition should be treated as more elastic or ignored altogether.

The United States supreme court in *Home Bldg. & L. Asso. v. Blaisdell* (1934), 290 U. S. 398, 425–426, 54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, said:

"Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved. The constitution was adopted in a period of grave emergency. Its grants of power to the federal government and its limitations of the power of the states were determined in the light of emergency and they are not altered by emergency. What power was thus granted and what limitations were thus imposed are questions which have always been, and always will be, the subject of close examination under our constitutional system."

The state next contends that it has the right to appropriate money for housing under the police power.

In *State ex rel. Jones v. Froehlich* (1902), 115 Wis. 32, 42, 91 N. W. 115, it was said:

"Concede the state government has the police power and that such works fall within it; nevertheless the state is pro-

hibited from exercising that power by means of works of internal improvements. The police power has been wittily defined as the power to pass unconstitutional laws, and some utterances of courts have seemed to justify such conception. It is nevertheless erroneous. An act which the constitution clearly prohibits is beyond the power of the legislature, however proper it might be as a police regulation but for such prohibition. Sectarian instruction cannot be given in public schools, however promotive of public morals the legislature may deem it. *State ex rel. Weiss v. District Board,* 76 Wis. 177, 44 N. W. 967. No law impairing the obligation of contracts may be enacted, however essential to the peace of the community. *Cornell v. Hichens,* 11 Wis. 353. The full extent to which courts may go in their construction is to recognize that constitutions are adopted for the purpose of establishing government, to which end some measure of police power is essential, and that a construction of any provision which would wholly prevent the accomplishment of that purpose is to be presumed against, if any other reasonable one can be found which is consistent with the existence of government. It is upon this ground that this and other courts have ascribed a limited meaning to the words 'internal improvements,' but, after finding what that meaning is, we cannot sustain the state government in being a party to them without nullifying the behests of the sovereign people, pronounced in the highest form of written law."

It is argued that if the state can construct buildings for the operation of the university and other educational institutions and for housing the inmates of charitable institutions and the penitentiary, it can also construct dwelling houses for veterans, because the former are just as much internal improvements as the latter.

This contention cannot be sustained. As pointed out in prior cases there is a valid distinction between providing structures necessary for the discharge of the state's functions and providing structures for the housing of private individuals. *State ex rel. Jones v. Froehlich, supra.* While discharged veterans are entitled to the consideration of the state by reason

of their prior service to the state, when discharged the veteran becomes a private citizen. When the state appropriates $8,000,000 to be used in the construction of houses for a certain class of its citizens it is certainly engaging in works of internal improvement. Our constitution does not permit the state to be a party to carrying on such works. It must provide for the veteran in some way other than carrying on internal improvements.

When houses are built under the provisions of the Veterans' Housing Act the veteran will have an option to purchase at any time within five years. What disposition will be made in cases where the veteran does not purchase does not appear. The appropriation by the state of $8,000,000 for the construction of houses for private occupancy, either as a renter or an owner, is certainly carrying on a work of internal improvement, which is forbidden by the constitution.

This court has uniformly held that acts of the nature of the legislation here considered are unconstitutional.

On November 16, 1946, the attorney general, in an opinion to Leo B. Levenick, director of veterans' affairs, considered sec. 66.40, Stats., which authorized cities to create "housing authorities" to construct, reconstruct, improve, alter, or repair any housing project or part thereof, and sec. 66.91 (3), now numbered 66.92 (3), which provided:

"The state department of veterans' affairs is authorized and directed to furnish any county, city, village, town or agency thereof with information and assistance to facilitate housing for veterans and servicemen and said department shall call upon the state planning board for assistance in carrying out the purpose of this subsection. The state planning board shall furnish such assistance when requested and the salaries and expenses therefor shall be paid out of the appropriation for the state department of veterans' affairs."

After reviewing the authorities the opinion states (XXXV Op. Atty. Gen. 394, 401):

"Sec. 66.91 (3) attempts to authorize the state department of veterans' affairs, through the state planning board, 'to furnish *any* . . . city . . . or agency thereof with information and assistance to facilitate housing for veterans and servicemen' (italics ours), and to expend unlimited sums therefor out of its appropriation.

"It appears inescapable from a reading of this statute that the legislature intended your department and the state planning board to furnish special assistance, for example, to the housing authority of the city of Appleton, and such authority believes and hopes that the assistance will include the drafting of blueprints and the preparation of specifications and material requirements for the particular houses which that authority proposes to construct for veterans in that community. Sec. 66.91 (3) contemplates that the cost of such assistance shall be charged to your appropriation.

"It is our opinion, based upon the authorities previously cited herein, that such assistance would violate the provisions of the Wisconsin constitution because the state would be expending money raised by state-wide taxation for other than a state purpose, and would be a party in carrying on works of internal improvement."

We are of the opinion that the attorney general's analysis of the law as there stated was accurate and is amply supported by the decisions of this court.

The law is clearly set forth in *State ex rel. Jones v. Froehlich, supra,* and *State ex rel. Wisconsin Dev. Authority v. Dammann* (1938), 228 Wis. 147, 277 N. W. 278, 280 N. W. 698, and no purpose would be served by restatement or embellishment.

This case simply requires application of well-established constitutional law to an illegal statute which has considerable popular support.

The enactment of the legislature attempts to authorize the state to be a party to an internal improvement and must be held to be in contravention of the constitutional prohibition.

*By the Court.*—The petition for a writ of *mandamus* is denied.