THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROBERT MILLS, Defendant.

City Magistrates' Court of New York, Borough of Manhattan, Twelfth District, August 12, 1936.

*William Copeland Dodge, District Attorney [Richard E. Carey* of counsel], for the plaintiff.

*Herbert B. Barron,* for the defendant.

ABELES, C. M. Harry Sussman, an agent of the Society for the Prevention of Crime, charges the defendant with a violation of section 982 of the Penal Law. The section in full reads:

" § 982.   Keeping Slot Machines or Devices.   1. It is unlawful:

"(a) to manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or to permit the operation of, or for any person to permit to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined:

"(b) to make or to permit to be made with any person any agreement with reference to any slot machine or device, as hereinafter defined, pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value.

" 2. Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or *become entitled to receive* any piece of money, *credit, allowance* or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which *may be exchanged* for any money, *credit, allowance* or thing of value, *or which may be given in trade,* or the user may secure additional chances or rights to use such machine, apparatus or device; irrespective of whether it may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value. (Italics mine.)

" 3.   A person who violates this section is guilty of a misdemeanor."

The definition of a slot machine or device contained in the statute (Subd. 2) clearly comprehends two kinds of devices, one which automatically ejects and delivers to the player something of intrinsic value, such as money or merchandise, and another by which the player " may  *  *  *  become entitled to receive " any piece of money, credit, allowance, etc., or " which may be exchanged for " any money, credit, allowance, or thing of value, " or which may be given in trade," etc.   Obviously, in the case of the automatic machine the keeping of it alone constitutes an unlawful act

under paragraph (a) of subdivision 1 of this section. This, however, is not so with respect to a device of the second kind mentioned, for here, in order to constitute an offense against the statute, there must at some point intervene an agreement between the keeper of it and the user, some sort of preceding negotiations or prearrangement made, however simple the process, constituting or resulting in an agreement between them. This is readily seen in the phrase " become entitled to receive " in the words " credit " and " allowance," in the phrases " may be exchanged for " and " which may be given in trade." These imply the fundamental elements of agreement or contract, proposal, and acceptance, a meeting of minds preceded by negotiation between persons. Hence the provision, in paragraph (b) of subdivision 1, to the effect that it is unlawful " to make or to permit to be made with any person any agreement * * * pursuant to which the user * * * may become entitled," etc., meaning the use of the machine for the purpose of betting between the owner and the player, which would be an " agreement." in which case the machine becomes a public nuisance under section 972 of the Penal Law, which otherwise it is not nor illegal. (*Times Amus. Corp.* v. *Moss, etc.,* no opinion for publication.)

The testimony given at the hearing held before me developed that on July 14, 1936, the complaining witness, Sussman, entered a " luncheonette " at No. 1765 Amsterdam avenue, borough of Manhattan, city of New York, and found the defendant present. He observed therein a vending machine labled " Advance Gum Ball Machine," a device so constructed that, on inserting a one-cent coin in a slot or aperture therein and operating it by means of a crank or other mechanical attachment thereto, the machine would or would not, unpredictably, yield either a ball of chewing gum or a token in the form of a " spotted gum ball." He asked the defendant whether, should he play the machine and receive from it the spotted gum ball, he would receive merchandise for it, to which the defendant answered that he would. The complainant thereupon played the machine five times, each time inserting a one-cent coin and operating it by means of the crank or attachment and, as a total result of all these five plays, the machine ejected one or more of the gum balls and the token balls, and that he thereupon delivered the token to the defendant, receiving from him in return " four cents worth of merchandise," which the defendant took for that purpose from his employers' stock in the establishment. The defendant had no interest in the establishment as partner, owner, or otherwise, his sole connection with it being that of an employee

of the owners, working for them as a chef at a salary of twelve dollars per week.

In the brief submitted by the society it is said: " Defendant Mills is not charged with the possession and control of the machine but with making the agreement with the Society's agent referred to."

The charge cannot be sustained against the defendant under paragraph (a) of subdivision 1 of the section on the theory that the defendant " permitted " the operation of the device, since it appears that the transaction did not take place " *in any room, space or building owned, leased or occupied by him or under his management or control.*"

It is sought to be maintained against him upon either of two assumptions, viz.: (1) That he made an agreement such as the statute prohibits, with the complainant as " user," or (2) that he aided or abetted in the making of such an agreement with him.

In the consideration of the first of these, we are confronted with the necessity of determining what and who are meant in the language employed in paragraph (b) of subdivision 1.

In law, an " agreement pursuant to which " an obligation is imposed or a right may arise is a compact between *parties* who are thereby subjected to the obligation or to whom the contemplated right is thereby secured. An agent or negotiator of an agreement — assuming that he acts under authority — is not a party thereto. Though it is negotiated through him, it still is one " made " or " entered into " by the principal. No right is thereby secured to, or obligation imposed on, the agent. By no stretch of logic could one find in the facts that Mr. Sussman could, as a result of what had passed before he had played the machine, have made any demand on the defendant to *personally* discharge the promise of merchandise. Plainly he would not look to him for it but only to the proprietors, and then only if the latter had " permitted " such agreement to be made by the defendant in *their* behalf. The heading to the section is, " Keeping slot machines or devices," primarily pointing to the owner or holder of the premises, and the phrasing " to make or to permit to be made " also indicates that the Legislature, in framing the act, intended the making of an agreement by the keeper of the machine or the permitting of it to be made *in his behalf* by another. Had the intention been otherwise, that is, to include an employee, *simple words to that effect would have been inserted* in the statute. Instances of legislative care in this respect in other penal statutes are frequent. For instance, section 421 of the Penal Law, dealing with untrue and misleading advertisements,

introduces the subject with the following words: " Any person, firm, corporation or association, *or agent or employee thereof.*" Another is section 936, dealing with fraudulent use of the name or title of secret fraternities, in which the introductroy clause is: " Any person, firm, association, society, order or organization, or any *officer, agent, representative* or *employee* thereof," etc. Again, section 1292-a of the Penal Law, headed " Issuing fraudulent check, draft or order; how punished," began, before the amendments thereto enacted in 1931 and 1933, as follows: " Any person who, with intent to defraud, shall make or draw or utter or deliver any check * * * upon any bank * * * knowing at the time of such making, drawing, uttering or delivering that the maker or drawer has not sufficient funds in * * * such bank * * * for the payment of such check, although no express representation is made in reference thereto, shall be guilty of a misdemeanor." Under that section, before its amendment, it was held in *People* v. *Fleishman* (133 Misc. 288, 293) that the treasurer of a corporation issuing a corporation check, signed by him as its treasurer, under the circumstances set forth in the section, was not himself punishable for its violation. The court there observed: " In the statute we are considering, however, no such wording appears. I am mindful that section 21 declares that the provisions of the Penal Law are not to be strictly construed, but does that call for an interpretation so wide and so liberal as to embrace within the terms of a statute those to whom no reference is made by name or by description? I do not think so. In the absence of a clearer declaration of the legislative intent, the point that this strict construction may give comfort to persons of evil mind finds its complete answer in this oft-stated pronouncement: under our system of government courts do not make laws: they interpret them; it is for Legislatures to attempt to prevent abuses by new enactments or by amendment of existing statutes."

It is pertinent to observe that since the opinion in the *Fleishman Case* (*supra*) was delivered the statute has been amended so as to make its introductory part read: " Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money *either in his own behalf or in behalf of any other person, or as an agent or representative of another or as an officer or agent of a corporation or purporting to be such agent, representative or officer.*"

I, therefore, conclude that the defendant has not been shown to have " made an agreement," within the meaning of section 982.

This brings me to the question whether the facts show that the

defendant aided or abetted in the commission of a crime, in which, case he would be liable as a principal, although not directly committing it. (Penal Law, § 2.)

Implied in the terms "aid" and "abet" is the need that there be at least two persons concerned in the commission of the offense, for there cannot be an aider or abettor unless there be also another person who is aided or abetted. There must, notwithstanding the assimilation of terms in the definition of the term "principal," contained in section 2, be "a person [who] directly commits the act constituting the offense" and another who "aids and abets in its commission"— in point of fact, a principal guilty of actual commission, a completed crime, before it can be said that another has aided and abetted in its commission. Were there evidence before me that the defendant's employers had authorized the defendant to make the agreement in their behalf, they would appear as principals acting through the defendant as their agent in making the agreement, in which case they would be guilty as principals in fact, and the defendant guilty as one aiding and abetting them by making the agreement for them. The facts here do not show such a situation. There was testimony to the effect that one of the two partner-owners of the establishment, whose names or identities the evidence does not disclose, was there at the time, but none that he participated in the transaction or saw or heard what transpired between Mr. Sussman and the defendant, nor any to the effect that either of the owners authorized or empowered the defendant either to make an agreement in their behalf with reference to the machine or to promise or to give merchandise should the user obtain the token ball as a result of his play. No authorization or permission from the defendant's employers to the defendant to make, as their agent, any agreement in their behalf, appears. Nor could the defendant's employers, upon the state of the evidence before me, be held guilty in a prosecution against them on the theory that there was "apparent authority." That doctrine, which is applied in civil cases, is essentially the doctrine of equitable estoppel, based on the maxim "that when one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who has enabled the third person to do the injury." (*Matter of Dugan*, 147 Misc. 776, 781.) It goes no further in its application, and, indeed, even in civil cases it must appear that the person whom it is sought to charge created the "appearance" of authority, the proof of the appearance alone being insufficient. This is pointed out clearly by the Court of Appeals in *Edwards* v. *Dooley* (120 N. Y. 540, 544, 551) where the court says: "While a principal is bound by his agent's acts when he justifies a party dealing with his agent in

believing that he has given to the agent authority to do those acts, he is responsible only for that appearance of authority which is caused by himself, and not for that appearance of conformity to the authority which is caused only by the agent." (See, to the same effect, *Churchill Grain & Seed Co., Inc.,* v. *Buchman,* 204 App. Div. 30; *Wen Kroy Realty Co., Inc.,* v. *Public Nat. Bank & Trust Co. of New York,* 260 N. Y. 84, 87; *Armstrong Co.* v. *Majestic Motion Picture Co.,* 87 Misc. 141.) To hold otherwise would open the door to great injustice and fraud, for by that means liability could be imposed on the innocent by the designing. In criminal cases, ignorance or indifference on the part of one momentarily left in charge or to but momentarily watch an establishment might result in placing guilt where it does not belong. Nor would any inference that might be drawn from the fact that one was left in charge justify an assumption that he was clothed with authority to commit an unlawful act. The presumption would be to the contrary. (*Clark* v. *Metropolitan Bank,* 10 N. Y. Super. Ct. [3 Duer] 241.)

It is urged on me to consider that to construe the statute in the manner that I do here would open the door to the unlimited operation of these gambling machines by persons who would claim to be mere employees of owners whom it might be difficult to find or employees who would be actually the owners but claim to be " menials " of fictitious owners. It is already pointed out that these machines, without betting on unpredictable results of playing them, are not gambling machines. The possibility that it might in some cases be difficult to find the owners or that persons charged with offenses under the statute might give false testimony in their attempted defenses cannot be a consideration in the determination of the meaning of a statute, however salutary its purpose.

Section 27, to which I am also referred, has no application to the case. The prerequisite to its application is that the accused must be an " accessory " which section 2, defining the term, says is " a person who, *after* the commission of a felony " (here a misdemeanor) acts to aid the perpetrator of a crime to avoid punishment. Section 27 clearly deals only with an act that would make one an accessory, treats him as a principal, and assimilates, in that respect only, felonies and misdemeanors. Here also a plurality of persons is contemplated, one or more who have committed a crime, and one or more others who, *after its commission,* have aided the first to avoid or escape punishment.

The defendant is discharged.