NORMAN M. CLAPP, Secretary, Department of Transportation *Page 226 
You state that, while acting as agent for airport sponsors, pursuant to the provisions of sec. 114.32, Stats., you must submit an application for Federal aid for the sponsor. You further state that you must submit with said application an assurance that "replacement housing will be available or provided (built if necessary) for displaced persons." You also informed me that the State shares in airport project costs by making grants to a sponsor which are equal to the sponsor's cost or a percentage thereof.
You, accordingly, request my opinion as to whether the State grant loses its identity as soon as it is placed in the sponsor's airport project account, and thus, as agent for the sponsor you may give the above assurance and so provide replacement housing from project funds without violating Art. VIII, sec. 10, Wis. Const.
The Wisconsin Supreme Court in State ex rel. Martin v. Giessel (1948),252 Wis. 363, 31 N.W.2d 626, held that portion of the veterans' Housing Act enacted by ch. 412, Laws of 1947, so far as appropriating funds from the State general fund to be allocated to local housing authorities to carry a percentage of the cost of land, improvements and dwelling units of any veterans' housing project constructed by such local authorities, is unconstitutional as attempting to authorize the State to be a party to a work of internal improvement, in contravention of the prohibition in Art. VIII, sec. 10, Wis. Const. Section 10 was amended in 1949 so as to permit appropriations for the acquisition, improvement or construction of veterans' housing and now reads, in part, as follows:
". . . The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; but whenever grants of land or other property shall have been made to the state, especially dedicated by the grant to particular works of internal improvement, the state may carry on such particular works and shall devote thereto the avails of such grants, and may pledge or appropriate the revenues derived from such works in aid of their completion. Provided, that the state may appropriate money in the treasury or to be thereafter raised by taxation for the *Page 227 
construction or improvement of public highways or the development, improvement and construction of airports or other aeronautical projects or the acquisition, improvement or construction of veterans' housing or the improvement of port facilities. . . ."
In an earlier opinion, the then attorney general stated:
"We are of the opinion that subsec. (3) is in large part unconstitutional. The state cannot provide flood control through the building of levies or other such works, nor may it engage in the removal of buildings as an incident to such work. Such activities constitute works of internal improvement in which the state cannot engage. Art. VIII, sec. 10, Wisconsin constitution: State ex rel. Jones v. Froehlich,115 Wis. 32. For the same reason the state could not restore, reconstruct or repair residential properties, business establishments, public utility facilities, etc. And since the state may not engage in the erection of dikes, dams, the cleaning and enlarging of channels, etc., the committee may make no expenditures related to such work or to the other works mentioned." 32 OAG 420, 421.
The court in State ex rel. La Follette v. Reuter (1967), 33 Wis.2d 384,401, 147 N.W.2d 304, reaffirmed the definition of "works of internal improvement" as adopted earlier:
"`"`Works of internal improvement,' as used in the constitution, means, not merely the construction or improvement of channels of trade and commerce, but any kind of public works, except those used by and for the state in performance of its governmental functions such as a state capitol, state university, penitentiaries, reformatories, asylums, quarantine buildings, and the like, for the purposes of education, the prevention of crime, charity, the preservation of public health, furnishing accommodations for the transaction of public business by state officers, and other like recognized functions of state government."'"
In State ex rel. Warren v. Reuter (1969), 44 Wis.2d 201, 222-223,170 N.W.2d 790, the court stated:
". . . Sixty-seven years ago in State ex rel. Jones v. Froehlich
(1902), 115 Wis. 32, 38, 91 N.W. 115, this court defined *Page 228 
`internal improvement' in the concept of that day as `those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to the property interests of private promoters, as distinguished from those other things which primarily and preponderantly merely facilitate the essential functions of government.' . . ."
However, I must note that the prohibition contained in Art. VIII, sec.10, Wis. Const., applies only to the State and not to its subdivisions. The court in Redevelopment Authority v. Canepa (1959), 7 Wis.2d 643, 651,97 N.W.2d 695, stated:
". . . It has been held from almost the beginning of the state that while the state is subject to the prohibitions limiting the power of the state to contract a debt and prohibiting the carrying on of works of internal improvement, governmental units created by the state and carrying on their public functions in particular localities or geographical subdivisions of the state are not so subject. . . ."
Section 114.35 (1), Stats., authorizes the Secretary of Transportation to use the amount provided by the State pursuant to sec. 20.935 (1) (h), Stats., to assist sponsors in matching Federal aid with respect to specific airport projects. In an earlier opinion it was stated:
". . . The quoted section of the statutes evidences a clear intention that the fund appropriated to the state aeronautics commission shall be allotted by the state to the sponsor so that these funds, together with those raised by the sponsor, will constitute the `sponsor's funds' for the purpose of establishing the amount which shall be matched by the federal grant. . . ." 37 OAG 148, 150.
Article VIII, sec. 10, Wis. Const., provides, inter alia, that the "state shall never contract any debt for works of internal improvement, or be a party in carrying on such works . . ." The word "party" has been defined as:
"A person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually." Black's LawDictionary (1968) Revised Fourth Edition, at p. 1278. *Page 229 
"An `agreement' pursuant to which an obligation is imposed or a right may arise is a compact between parties who are thereby subjected to the obligation or to whom the contemplated right is thereby secured, and an agent or negotiator, acting under authority is not a `party' thereto."People v. Mills (1939), 290 N.Y.S. 48, 52, 160 Misc. 730.
Section 114.32 (5), Stats., provides that no county, city, village or town, shall submit a project application under the provisions of the Federal act unless the application has been approved by the Secretary of Transportation. It further provides that no such municipality shall directly accept any Federal funds but shall designate the Secretary of Transportation as its agent. Section 114.33, Stats., provides that any such municipality desiring to sponsor an airport project with Federal aid and State aid, or State aid alone, may initiate such a project by filing a petition with the Secretary of Transportation. Section 114.01, Stats., directs the Division of Aeronautics to develop a comprehensive State system of airports. The statute further provides that in selecting the general location of airports due regard shall be given to aeronautical necessity as evidenced by population, commerce and industry and other pertinent factors. The apparent legislative intent of the above quoted section designating the Secretary to act as agent for municipalities was to insure the establishment of some system and uniformity in airport development in this State.
". . . Pursuant to the grant of authority vested in him by the principal, the agent is the representative of the principal and acts for, in the place of, and instead of, the principal." 3 Am.Jur. 2d, Agency, § 1, p. 419.
Section 114.32, Stats., reads, in part, as follows:
"* * *
"(3) CONTRACTS. All contracts for the acquisition, construction, improvement, maintenance and operation of airports and other aeronautical facilities, made by the secretary of transportation either as the agent of this state or as the agent of any municipality, shall be made pursuant to the laws of this state governing the making of like contracts; *Page 230 
provided, however, that where the acquisition, construction, improvement, maintenance and operation of any airport or landing strip and other aeronautical facilities is financed or partially financed with federal moneys, the secretary of transportation, as agent of the state or of any municipality thereof, may let contracts in the manner prescribed by the federal authorities, acting under the laws prescribed by the federal authorities, acting under the laws of the United States, and any rules or regulations made thereunder, notwithstanding any other state law to the contrary.
"(4) DISPOSITION OF FEDERAL FUNDS. All moneys accepted for disbursement by the secretary of transportation pursuant to this section shall be deposited in the state treasury, and, unless otherwise prescribed by the authority from which the money is received, kept in separate funds, designated according to the purpose for which the moneys were made available, and held by the state in trust for such purposes. All such moneys are appropriated for the purposes for which the same were made available to be expended in accordance with federal laws and regulations and with ch. 114. The secretary of transportation, whether acting for this state or as the agent of any of its municipalities, or when requested by the U.S. government or any agency or department thereof, may disburse such moneys for the designated purposes, but this shall not preclude any other authorized method of disbursement.
"* * *"
I further note that sec. 114.33 (5), Stats., provides that the sponsor's share of the cost of the project shall be deposited in the State treasury promptly upon request and held in trust for the purposes of the project.
In the absence of any agency agreement, I would be forced to conclude that you could not give the required assurance to the Federal Aviation Administration and provide replacement housing without violating Art. VIII, sec. 10, Wis. Const. However, in view of the fact that political subdivisions of the State are not subject to this constitutional prohibition, and that you are required by statute to act as agent *Page 231 
on behalf of the airport sponsor for the sole purpose of insuring so, me system and uniformity in airport development in this State, the State does not become a party thereto in a legal sense, and thus, you, as agent in behalf of the sponsor, may provide the required assurance to the Federal Aviation Administration and provide replacement housing without violating Art. VIII, sec. 10, Wis. Const. Furthermore, the State funds are a grant to the airport sponsor and become the sponsor's funds. The fact that these funds, together with those added by the community and contributed by the Federal Government, shall be placed and held in trust in the State treasury for purposes of the project does not make them State funds.
RWW:GBS