ITALY A. STARKEY V. WILLIAM M. HORTON.

*Landlord and tenant—Option to lessee for extension of lease—Sale of premises by lessor—Notice.*

Defendant leased a farm of plaintiff's husband for a term of three years from April 1, 1882, with the privilege of renting it for a fourth year. He took possession, and in the spring and summer of 1884 made preparations to put in a crop of wheat, which he commenced sowing the seventh or eighth of September, completing such sowing the fourteenth or fifteenth of said month. The lessor conveyed the land to plaintiff in March, 1884, who recorded the deed September 11, 1884. During the summer of 1884, defendant had negotiations with the lessor for the purchase of defendant's privilege of putting in a crop of wheat *that* year, but no, notice was given to him of the sale of the land until March, 1885, when he was notified to vacate the premises, which he did the last of April or first of May, 1885, supposing he was obliged to do so, but also supposing that he had a right to the wheat, over which he kept a general oversight. Defendant harvested the wheat, which was replevied by plaintiff, and on the trial the jury found for defendant, under the option in the lease allowing him to rent the land for a fourth year. In affirming the judgment, the Court find:

1. That plaintiff took her deed charged with notice of defendant's occupation, and of all his rights and privileges under the lease, and that she was bound to notify him of the sale to her of the farm before he exercised his option under the lease, or he would hold, at least, the benefit of what he had done thereunder before such notice.

2. That the sale meant by the lease was an *open* and *notorious* one, that should be brought home to the defendant, and, until he had such notice, he was entitled to deal with his lessor, the *apparent:*

owner of the title, the same as if he were the *actual* owner, whose grantee was bound by his acts and declarations until such notice was given.

3. That the evidence of the bargaining with defendant for his right to sow the wheat warranted the finding of the jury as to the exercise of defendant's option to hold the premises another year.

4. For further points, see opinion.

Error to Livingston. (Newton, J.) Argued February 3, 1887. Decided February 10, 1887.

Replevin. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Mitchel & McGarry*, for appellant.

*Albert Dodge* and *L. S. Montague*, for defendant.

MORSE, J. This is an action of replevin to recover a certain quantity of wheat.

The following facts are undisputed:

In March, 1882, William W. Starkey was the owner in fee of a farm of about 153 acres, lying near the village of Fowlerville, in Livingston county. He and his family, his wife being the plaintiff in this cause, resided upon this farm. In the latter part of March, 1882, William W. Starkey executed and delivered to the defendant a lease of this farm,—

"For and during and until the full end and term of three years next ensuing the first day of April, A. D. 1882, fully to be completed and ended."·

The defendant was to pay rent as follows: Six hundred dollars April 1, 1882; six hundred dollars April 1, 1884; and six hundred dollars April 1, 1885. The lease contained the following clause :

"The party of the second part is to have the privilege of renting said premises another year at the same rate, provided said first party does not sell the same."

There was a crop of wheat growing on the premises at the

time of the execution of the lease. This wheat was not reserved in the lease, but under an oral agreement, made at the time, Starkey had the benefit of this crop, for which the defendant paid him $15.50 per acre.

Horton entered upon the premises under the lease, and occupied the same for the three years therein specified, yielding up the possession in April, 1885, to the plaintiff, the grantee of William W. Starkey. Starkey deeded the premises to his wife, Italy A. Starkey, for an expressed consideration in the deed of $10,000, March 20, 1884, which conveyance was not recorded until September 11, 1884. In the spring and summer of 1884, the defendant made preparations to put in a crop of wheat upon the farm, and, in September of the same year, sowed 51 acres. He commenced sowing on the seventh or eighth of the month, and finished on the fourteenth or fifteenth.

After the execution of the lease, Starkey and his wife moved to Ionia, Michigan, where they resided until the spring of 1885, when they came back, and took up their residence upon the farm again.

In July, 1885, the defendant entered upon the premises and cut the wheat, and stacked it, claiming it as his own. Starkey was away at Ionia, attending to his business there. Mrs. Starkey, who was on the place, forbid the entry and the cutting of the wheat by defendant. She then brought replevin for the same, and the wheat was taken under the writ, and delivered to her. Upon the trial in the court below, it was stipulated that the value of the wheat on the day it was replevied, July 27, 1885, should be called $1,-240.39.

No notice of the sale of the premises to her was ever given by Mrs. Starkey to the defendant until after the wheat was sowed; nor is there any evidence that any one ever told him of this deed, or that he had any actual knowledge of it, until in the fall of 1884, or any constructive notice of its exist-

ence until it was recorded. Neither Starkey, his wife, nor any one in their behalf, forbid or interfered in any way with his putting in the crop.

The defendant's testimony was to the effect that in the latter part of May or first of June, 1884, he had a conversation with William W. Starkey, in Fowlerville. Starkey asked him how much wheat he was going to put in on the place that fall. Horton told him that he was going to stubble in 40 acres, and sow the oat-field and another field. Starkey asked if that was not considerable wheat to sow on the place, and Horton told him it was a pretty good crop, but it was all stubble ground, and he considered it better to sow that much that to plow up sod ground and sow less. Starkey made no reply to this, and the talk ended.

In July the same parties had another conversation in Fowlerville. Starkey asked Horton what he would take for his (Horton's) privilege of putting in the wheat on the farm that fall. Horton told him he could not leave the farm the next spring without great inconvenience, but, if Starkey wanted to come back in the spring, Horton would think over what he would do, and make him an offer in writing. Starkey said he was going right back to Ionia, and Horton thereupon agreed to write him there in a day or two, and let him know what he would take for the privilege.

July 20, 1884, he wrote Starkey the following letter:

"FOWLERVILLE, July 20, 1884.

"W. W. STARKEY,

"*Dear Sir:* I will make you this proposition, to give you a chance to put in wheat on the farm this fall: You can put in the forty-acre field, and I will put in the field that is into oats now, on west side, for my share, and give the mare Heraldine and one hundred dollars for the year's rent. I think there is at least four hundred dollars profit in a crop of wheat on the forty the way either of us are situated. I shall want to know soon, as I shall want to commence plowing next week.

"Yours very truly,

"W. M. HORTON."

Starkey replied, in substance, to this communication that defendant charged too high for the privilege, and he could not see how Horton figured $10 profit an acre on a crop of wheat. Upon the receipt of Starkey's letter the defendant commenced plowing for wheat ground.

The defendant further testified that some time after election, in November, 1884, Fred H. Warren, an attorney residing at Fowlerville, came to him, and said that Starkey had sent him with the lease, and wanted Horton to sign a surrender on the lease of his option to hold the premises another year.

In March, 1885, for the first time, Horton was notified of the sale of the farm to Mrs. Starkey. Mr. Warren saw Horton, and informed him of the sale, and told him that Mrs. Starkey would expect him to vacate the place, and give her possession according to the terms of the lease. Supposing that he had to give up the place, defendant moved off the premises the last of April or first of May, 1885. He testifies that he supposed, however, that he had a right to his wheat, and that he kept a general oversight of the fields in which it was growing. He never heard, until a few days before harvest, that Mrs. Starkey laid any claim to the wheat. The day before he commenced harvesting, Mr. Warren came to see him, and said he had been sent by Mrs. Starkey, who requested him to ask Horton what he proposed to do about the crop of wheat. Horton replied that he proposed to do what any one else would that had a crop of wheat,—to harvest and take care of it.

Defendant also claimed that there was an oral agreement between Starkey and himself that Starkey was to have the first crop of wheat on the place, and the defendant should have the privilege of putting in a crop the fall of the last year, and to harvest it, and have the avails thereof. As this agreement was claimed to have been made at the time the

lease was executed, it came within the statute of frauds, and therefore cut no figure in the case.

Starkey claimed in his evidence that he gave defendant no license or consent to put in the wheat, and that defendant told him early in the spring, and several times during the summer, that he did not want the place for another year, and he understood all the time that he did not want it, and was not to have it. He swears that he asked Horton, in June, 1884, if he wanted the place another year, and Horton said he did not.

"I think I told him it probably could be arranged with my wife for the place, provided he wanted it."

He admits, however, on cross-examination, that he never told Horton that he had sold the place to his wife. Starkey also admits that he had a conversation with Horton in July, 1884, and says:

"I was trying to buy the privilege of putting in the wheat, —*trying to get his privilege.* I asked him what he would take for *his* privilege of putting in the wheat,—*what he was going to put in.*"

Starkey thinks he did not reply to Horton's letter of July 20th, as he generally kept a copy of his business letters, and could find no copy of any answer to this one. He further testifies, in which he is corroborated by Warren, that he met Horton in Warren's office, before suit, and while the wheat was being cut, and that Horton there admitted that he had told Starkey, long before the wheat was sown, that he did not want the farm for another year.

Mr. Warren testified, on behalf of the plaintiff, that he notified Horton on the fourteenth of July, 1885, that she claimed the wheat, and after it was stacked made a formal demand of the same for her. Defendant denied her right to the wheat at both times. He also swears that he asked Horton to indorse consent on the lease to vacate the premises by the first day of April, 1885, but thinks it was in the spring

that he made the request. The first time he ever claimed the wheat for Mrs. Starkey was on the fourteenth of July, 1885. A day or two after that time he also forbade Horton cutting the wheat.

It was not claimed that defendant had any authority or consent from Mrs. Starkey to put in the wheat. The deed from Starkey to his wife was drawn at Fowlerville, and there executed, Mrs. Starkey not being present. Starkey swears that he took it home to Ionia within two or three days, and delivered it to his wife. There is no evidence of any consideration paid by Mrs. Starkey, except the recital of the same in the deed. The defendant denied that he ever informed Starkey that he did not want the farm for another year, except in case the negotiations between him and Starkey as to the sale of his privilege of putting in wheat were perfected and completed.

Upon this evidence, and the charge of the court, the jury found a verdict for the defendant in the sum of $1,318.76, and judgment was rendered therefor.

The court instructed the jury to find specially whether they rested their verdict upon a license granted by Starkey to defendant, or upon the ground that defendant had exercised his option, under the lease, to hold for the fourth year.

The jury returned as follows:

"That in accordance with the request of the court that they find their verdict under the clause in the lease allowing the defendant to use the farm for the fourth year, if not sold sooner."

The verdict is right, and in accordance with equity and justice. We are unable to find any error in the proceedings, notwithstanding the able and ingenious argument of plaintiff's counsel, which we shall notice.

It is contended, in the first place, that the acts, declarations, and letter of William W. Starkey were not admissible in evidence, as against the plaintiff, as the sale of the premises,

to her was prior to any of such acts or declarations, and there is no evidence in the record that he possessed any authority, either expressed or implied, to act for her. If this contention can be sustained, it necessarily follows that the wheat could not be the property of defendant under the lease, or under any license. But we think it must be considered that, when Mrs. Starkey took this deed from her husband, she took it charged with the notice of defendant's occupation, and of all his rights and privileges under his lease, and that, knowing that Horton had the option of choosing or electing to stay upon the premises another year, as she was bound to know, it was her duty to acquaint him of such sale before he exercised such option, or he would hold, at least, the benefit of what he had done under such option before such notice.

The sale meant by such lease was evidently an open and notorious sale,—one that should be brought home to the defendant. Such must have been the intention of the parties when the lease was executed; and the policy of the law, which is to promote justice and do equity, will not allow a secret bargain and sale, under such a lease, to take from the lessee the profits or the avails of his labor, earned in good faith under the option in such lease, and in entire ignorance of such secret sale, and without notice, either actual or constructive, that the lessor had parted with his title. And until he has such notice he is entitled to deal with his lessor, the apparent owner of the title, the same as if he were the actual owner; and the grantee in the secret conveyance will be bound by the acts and declarations of his grantor until he takes some steps to disabuse the mind of the lessee of the idea, which he rightfully holds, that the place has not been sold. Any other construction of this lease would authorize a lessor and his grantee to fraudulently obtain the earnings of the lessee without recompense, or relief from the fraud. This the law will not permit.

It is further argued that there is no evidence tending to

show that the defendant ever exercised his option to hold the premises another year under the lease; and that the fact that he quietly and peaceably surrendered up the premises in April, 1885, is a conclusive circumstance to show that he did not take such option. We find sufficient evidence to warrant the finding of the jury in this respect. Starkey agrees with Horton that he was bargaining in July with Horton for *his* privilege of putting in wheat that fall, and Horton testifies that he then told Starkey that he could not leave the farm in the spring of 1885 without great inconvenience, but he would think about it, and make a written offer as to what he would do. He made the offer, and closes his letter by saying: "I shall want to know soon, as I shall want to commence plowing next week." Plowing for what ? For wheat, and nothing else. Starkey admits that he received this letter ; and either by answering it, or not answering it, as you will, it must be held that he authorized Horton to proceed and put in this crop, in the full belief that he was to hold the farm for another year, and without any notice from any one that the place had been sold.

The fact that he was notified in the spring that the farm had been sold to Mrs. Starkey, and he could stay no longer, and he thereupon went off, cuts no figure in the case whatever. Suppose that Starkey had not deeded the place to his wife until after the wheat had been sown, under the same circumstances as it was sown, would the vacating of the place by Horton, upon notice of such sale, have had any effect whatever upon his title to this wheat ? Most certainly not, unless by some arrangement he had given his right to it up, upon the surrender of the lease. His rights are no different, as the case now stands, than they would have been under the case supposed.

. It is also urged that, under this construction of the lease, and the finding and verdict of the jury, if allowed to stand, the defendant will obtain the whole crop of wheat without

paying any rent therefor; that he did not tender the rent to plaintiff or Starkey, or agree to pay it; that plaintiff cannot recover it under the lease, because she has accepted the surrender of the same; that she cannot recover for use and occupation, because the defendant has not had the premises; and that she is therefore remediless in the premises.   In answer to this it can be said that the rent was not due, by the terms of the lease itself, until April, 1886.   When the wheat was replevied, no rent was due, and there was no necessity for the tender of any rent on the part of the defendant.   If Starkey and the plaintiff have, by their own acts, lost any rent of these premises, or the use of the fields covered by the wheat from April to July, that fact cannot, in our opinion, alter or lessen the rights of the defendant in this suit.

We have not deemed it necessary to cite any authorities in support of our view of the case, as it clearly comes, upon every proposition, within the well-known and general princ ples of the law.   We have carefully examined the cases cited by the counsel for the plaintiff in support of their claims, and find nothing therein to shake or impair our faith in the law as we have expressed it.

The judgment must be affirmed.

The other Justices concurred.