139 Wis.2d 1 (1987)
406 N.W.2d 728
STATE of Wisconsin EX REL. DEPARTMENT OF DEVELOPMENT, Petitioner,
v.
STATE of Wisconsin BUILDING COMMISSION, Respondent.
No. 86-1137-OA.
Supreme Court of Wisconsin.
Argued January 7, 1987.
Decided June 9, 1987.
*2 For the petitioner the cause was argued by Edward S. Marion, assistant attorney general, with *3 whom on the briefs was Bronson C. La Follette, attorney general.
For the respondent there was a brief by David J. Hanson, Nelson D. Flynn and Michael, Best & Friedrich, Madison, and oral argument by Nelson D. Flynn.
Amicus curiae brief was filed by Lawrence Bensky, Brady C. Williamson and La Follette & Sinykin, Madison, for the Wisconsin Housing and Economic Development Authority.
Amicus curiae brief was filed by John S. Holbrook, Jr., Nancy J. Delacenserie and Quarles & Brady, Madison, for Wisconsin Health Facilities Authority.
DAY, J.
This is an original action for Declaratory Judgment. The question is: Does sec. 560.04(3), Stats.[1] (1985), authorizing the State of Wisconsin *4 (State) through the Wisconsin Department of Development (Department) to make loans to private real estate developers for privately owned housing, part of which is to be available to "low and moderate income" persons, violate Article VIII, sec. 10 of the Wisconsin Constitution ban on state involvement in "internal improvements." The original provision in the Constitution of 1848 read as follows:
"The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; but whenever grants of land or other property shall have been made to the state, especially dedicated by the grant to particular works of internal improvement, the state may carry on such particular works, and shall devote thereto the avails of such grants, and may pledge or appropriate the revenues derived from such works in aid of their completion."[2]
*5 We conclude the statute here in question violates this provision of the Constitution and we so hold.
This provision in the Constitution has frequently been amended as perception of "needs" has been addressed by the legislature and the electorate, sometimes as a response to adverse court rulings rejecting specific legislation as violative of the internal improvements ban of the Constitution.[3]
The provision was first amended in 1908 and has been amended a total of six times.[4]
The Department of Development petitioned this Court June 17, 1986, to take original action in this case and the petition was granted on July 21, 1986.
The Statute in question, sec. 560.04(3), authorizes the Department to make loans with or without interest for the development or construction of low and moderate income housing projects. The funds are to come from the proceeds of revenue obligations issued by the State and repaid from borrower's payments.[5] On June 17, 1985, the Secretary of the *6 Department, pursuant to the statute, requested the Wisconsin Building Commission to contract $1,000,000 in revenue obligations to fund the program. On June 26, 1985, the Building Commission by resolution declined to do so because of doubts as to constitutionality under the Internal Improvements Clause.
This court over a century ago commented on the history and reasons behind our strong constitutional provision against state involvement in works of internal improvement. This court said:
"When our constitution was adopted, the subject of state indebtedness, particularly for works of internal improvement, was prominent in the public mind. Some of the states had theretofore contracted large debts in the prosecution of such works, and the weight thereof pressed heavily upon the people. ... the framers of the constitution were solicitous that no such evil should ever afflict this state. Hence the general prohibition of sec. 4, art. VIII: `The state shall never contract any public debt, except in the cases and manner herein provided,' and the specific prohibition of section 10: `The state shall never contract any debt for works of internal improvement.'
"Reading the provision under consideration in connection with the other limitations contained in the constitution, and in the light of the conditions which existed when the instrument was framed and adopted, its true intent and meaning are perfectly plain. It prohibits the state from being a party in carrying on any work of internal improvement, unless a grant of land or other property has *7 been made to it, specifically dedicated by the grant to such work ....
"The courts owe and cheerfully yield great deference to acts of the legislature. It is vastly more agreeable to approve than to antagonize the action of a coordinate department of the government. But legislation which breaks down the most vital safeguards of the constitution, and casts upon the people the burden of liabilities which they solemnly and emphatically declare in the organic law should not be cast upon them, cannot be upheld by this court. To sustain such legislation would be a practical abdication of the functions of the court." Sloan, Stevens & Morris v. State, 51 Wis. 623, 629-632, 8 N.W.2d 393 (1881). (Emphasis added).
The questions that must be answered in any challenge to legislation under this provision of the Constitution are (1) Is the object sought to be accomplished an "internal improvement"; (2) does it call for the State to "contract any debt" to carry it out, or; (3) does the legislation cause the State to "be a party in carrying on such works"?

I
This court has already settled the question as to whether housing is an internal improvement and has said that it is.
At the end of World War II, as millions of service personnel were mustered out of the Armed Forces, the legislature of Wisconsin perceived a great need for low cost housing for returning veterans and set up a plan for state backed grants for that purpose to local veterans housing authorities. This court in Giessel struck down that legislation holding it ran afoul of Article VIII, sec. 10 of the Constitution.
*8 The legislation provided that an appropriation be made to the Wisconsin Veterans housing authority from the general fund in an amount equal to one-half of the net proceeds of the intoxicating-liquors occupational tax and the state authority was authorized to make allotments to local housing authorities on the basis of ten percent of the cost of any veterans housing project constructed by such local authorities. The local authority rented such units at low rent to returning veterans. This court in Giessel, 252 Wis. 2d at 365-366, recognized the emergency and said:
"The action of the legislature was undertaken in view of a nation-wide housing emergency of the utmost gravity which particularly affects veterans ... This grave housing shortage has compelled many veterans upon return from service to live in temporary quarters, trailers, shacks, reconverted barracks, garages, or to live with friends or relatives in single-family dwellings which may or may not have been converted for two-family use."
The court recognized that private capital was not available to alleviate the housing shortage:
"The inflation of the currency has doubled building costs of prewar years and has operated to discourage completely the constriction by private capital of rental units in the price range, approximating $50 per month, which is the maximum most veterans can afford to pay." Giessel, 252 Wis. 2d at 366.
The court said that such housing is a work of internal improvement:
"It would appear almost axiomatic that if housing is a public venture, it constitutes an internal improvement. If it is not a public improvement, *9 then certainly the government could have no basis for entering into the field, for it must then be private business.
"The courts and legislature of Wisconsin have consistently considered activities of this type to be works of internal improvement." Giessel, 252 Wis. 2d at 370-371.
The State argued in Giessel that the legislation was justified because the housing shortage created an "emergency" and that the appropriation for housing was justified under the "police power." This court said that "emergency" does not create power, does not increase granted power or remove or diminish restrictions placed on the State by the Constitution. Even to concede that the State had the police power and that such works fall within it, the State is prohibited from exercising such power by means of works of internal improvement. Id. at 372-373.
In striking down the veterans housing legislation, this court said:
"Our Constitution does not permit the state to be a party to carrying on such works." Id. at 374.
In the case of State ex rel. Jones v. Froehlich, 115 Wis. 32, 36, 91 N.W. 115, 116 (1902), this court held that it was a violation of the internal improvements ban for the state to be involved in the construction of levees. This court reached this conclusion even though the projects would save lives and property, that such projects were within the police power of the state and do serve a public purpose. The court also made some important observations as to the types of work that are permissible as not violating the internal improvement ban and those that are not permissible:

*10 "That by the appropriation of money, to be expended by a state commission in certain work, the state is made `a party in carrying on such works,' cannot be doubted.
"Indeed, that is not questioned, but only whether the construction of the proposed system of levees is a work of `internal improvement,' within the meaning of this constitutional inhibition. The words themselves are capable of including substantially every act within the scope of governmental activity which changes or modifies physical conditions within the limits of the commonwealth; but, as the purpose of the constitution was to form a government (preamble), we must presume that these words were used in sufficiently limited sense to permit the accomplishment of that fundamental purpose, at least to a reasonable extent. That some limitation of the broad meaning was intended has been recognized by all branches of the government and by the people, in the unchallenged provisions for state capitol, university, schools for blind, deaf, and feeble-minded, hospitals, penitentiaries, and the like, and for extensive works in improvement of the grounds appurtenant thereto. On the other hand, we cannot doubt the use of these words in a sense to exclude works which, but for the prohibition, might have been within the legitimate field of state government,works having at least some measure of public and governmental purpose, else the prohibition would have been needless. ...
"[T]he relator presents the argument that in protection of life and property, or otherwise, there may be found a public purpose in the construction of the proposed levees, whereby they are brought within the police power of the legislature. This may well be conceded arguendo, without changing the result. Important public and general interests *11 may be, doubtless are, subserved by railroads, canals, street railways, and telegraphs; else the state's right of eminent domain could not be conferred in their aid. But that fact does not prevent them from being works of internal improvement, forbidden to the general state government. It is on the ground that such works do serve a public purpose, and are within the ordinary police powers conferred by the general vesting of legislative power, that it has been held that the legislature may delegate to counties and municipalities authority to aid them by loans of credit. Bushnell v. Beloit, 10 Wis. 195; Rogan v. Watertown, 30 Wis. 259. But that result is reached only because the prohibition contained in sec. 10, art. VIII, of the constitution, applies only to the general state government, and not to the minor political divisions. Concede the state government has the police power and that such works fall within it; nevertheless the state is prohibited from exercising that power by means of works of internal improvements .... An act which the constitution clearly prohibits is beyond the power of the legislature, however proper it might be as a police regulation but for such prohibition." State ex rel. Jones v. Froehlich, 115 Wis. 32 at 36, 41-42.
The Department (Petitioner) in its brief, on page 2, says: "In the housing area there is an arguable conflict between Giessel, and State ex rel. Warren v. Nusbaum, 59 Wis. 2d 391, 208 N.W.2d 780 (1973)."
[1]
We conclude that when the Nusbaum case is considered in its context of state "encouragement" of low and middle income housing through the Wisconsin Housing Financing Authority (now Wisconsin Housing and Economic Development Authority) declared *12 by this court to be a public body corporate and politic, and neither an arm nor agent of the state, the "conflict" largely disappears. Nusbaum is more fully discussed in part III, infra.

II
The next question is, does the proposal embodied in sec. 560.04(3) Stats., require the State to "contract any debt?"
[2]
The Petitioner and the Respondent agree that because the bonds are to be paid off from revenue generated in the pay back by the borrowers and because the State does not guarantee payment to the bond holders in the event of default, the State is not contracting any debt.[6]
For purposes of this opinion we accept the conclusion of the parties that State debt is not involved.

III
The next question is: Does the legislation cause the State to be a party in carrying on such works of internal improvement?
[3]
The use of the conjunction "or" in the phrase, "The State shall never contract any debt for works of internal improvement or be a party in carrying on such works," shows that the phrase "be a party in carrying on such works" has a vitality of its own. The *13 antipathy of the state's founders against the state entering the quagmire of "internal improvements" extended to prohibiting the state from even being a party to such works whether or not any debt was contracted. The Department of Development, a state agency, using the state machinery to issue bonds, being involved in planning or approving plans for housing and eligibility for loans and then lending the money and collecting it, bringing whatever legal action might be necessary to collect from borrowers who default to pay bond holders when the whole purpose is to see to it that housing is built is clearly being "a party in carrying on such works." Here it is plain the State is a very important, if not indispensable party in bringing about these "works of internal improvement." This is true even though the benefits accrue to the private borrowers who continue to be the owners of these "works of internal improvement." It is not necessary that the State be or become the actual owner of the housing in order to "be a party in carrying on such works," i.e., housing.
The Petitioner argues that the State is not such a party and cites Nusbaum, and Wisconsin Solid Waste Recycling Auth. v. Earl, 70 Wis. 2d 464, 235 N.W.2d 648 (1975). Petitioner claims there is a two factor test: (1) Is it a valid governmental function (and that Nusbaum said housing is), and (2) whether private capital was unable or unavailable to satisfy the need. Because the legislature declared such unavailability it follows that the program under consideration is not an internal improvement and may proceed according to the Petitioner.
The Petitioner relies heavily on language used by this court in Nusbaum. In that case, this court said that Wisconsin Housing Finance Authority (now Wisconsin *14 Housing and Economic Development Authority or "WHEDA") could do what the State itself could not do, i.e., operate a housing finance program. The proscription on housing came about because of this court's ruling in Giessel. The legislature in the case of WHEDA established a corporate body, independent of the State, to provide financial assistance to local housing authorities and developers. The legislature appropriated $250,000 in "start up funds," which the Authority repaid and the law required state agencies to cooperate with the Authority.
This court held that:
"It cannot seriously be questioned that the safety, health, education, morals, welfare and comfort of the residents of this state are of great concern and the proper objects of our state government's interest. It is also reasonable to assume that the elimination of unsafe, unsanitary and overcrowded housing will promote these objectives. It is not for this court to consider whether this policy is sound as a matter of economics and public policy. That is a legislative matter. The declaration of purpose enunciated by the legislature, supported by the department of administration's report, demonstrates that ch. 234, Stats., evidences a public purpose." Nusbaum, 59 Wis. 2d at 420-421.
So here, both the reasons for the legislation and the goals sought to be achieved are almost identical and likewise show that a public purpose is demonstrated. But our inquiry does not end there.
It is an independent Authority, separate and apart from the State, that carries on the WHEDA program. Our court has rejected the idea that such bodies are a mere gloss, a subterfuge to defeat the constitution. They are in fact substantive entities and *15 make the difference between objectives and programs that may pass constitutional muster and those that do not.
"The powers conferred upon the Authority support the legislative declaration that the Authority is an independent entity, denominated a public body corporate and politic. To the extent the words denote interdependence and a common identity, the Authority is neither an arm nor agent of the state.
"The legislature has the power to create separate entities designed to carry on a public purpose. Townsend v. Wisconsin Desert Horse Asso., 42 Wis. 2d 414, 423, 167 N.W.2d 425 (1969). The obvious purpose behind the creation of many such entities has been the indirect achievement of some purpose that the state cannot achieve directly because of various constitutional limitations placed upon the power of the state. While it has been intimated that such plans are a subterfuge to evade the constitutional provisions, such attacks have been rejected on the theory that it is never an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do it." Nusbaum, 59 Wis. 2d at 424-425. (Emphasis added.)
In Nusbaum, this court said:
"The question remains as to whether the provisions of ch. 234 make the state a party in carrying on works of internal improvement within the contemplation of the Wisconsin Constitution. We are of the opinion it does not." Nusbaum, 59 Wis. 2d at 433-434.
This court then referred to the legislative declaration that there was a seriously inadequate supply of needed safe and sanitary housing for persons of low *16 and moderate income; that the shortage is inimical to the welfare of Wisconsin residents and impedes the orderly growth and prosperity of the State and "that present patterns of financing limit the ability of private building and investment industry to produce, without assistance, the needed construction. ..." This court held the record supported these legislative declarations. Id. at 434. This court distinguished the case before it from Giessel:
"State ex rel. Martin v. Giessel, supra, presented the consideration of a legislative enactment distinctly different from that in the instant case. In Giessel, the State appropriated $8,000,000 as a direct grant, paid for from state tax revenues to actually construct housing." Id. at 434.
This distinction became extremely important as this court proceeded to analyze the reasons why the housing program of the Authority was not an internal improvement:
"It would be an unwarranted bar to legitimate government functions to construe Giessel to encompass as an internal improvement the activity of the Authority as established by ch. 234, Stats." Id. at 435.
Petitioner argues that a two factor test should be applied citing Nusbaum, 59 Wis. 2d at 436, wherein this court said:
"[C]ases demonstrate that in considering the application of the internal improvement restriction at least two factors are considered: (1) The dominant governmental function, and (2) the inability of private capital to serve the need." Id. at 436.
The court then said:

*17 "In the instant case, the health, safety and welfare of the people is the dominant purpose of ch. 234, Stats., and the construction of public housing is incidental thereto ...." Id. at 436-437.
However, one must not read more into that statement than the court did. It went on to say:
"Petitioners allege that the state is made a party to carrying on works of internal improvement because of the initial appropriation of $250,000 to the Authority; sec. 234.15, Stats.; sec. 234.19; and also because sec. 234.30 provides that state agencies shall extend their cooperation to the Authority by providing personnel and facilities. We are of the opinion that underwriting the initial operating costs of the Authority and pledges of cooperation would not involve the state in the financing or construction of public housing; and that such activity on the part of the state constitutes only the encouragement of such activity by others. State ex rel. Wisconsin Development Authority v. Dammann, supra.

"We have previously determined there is a valid public and state purpose for the enactment of ch. 234, and we now find and conclude the dominant purpose set forth in the enactment is a valid governmental function and that since private capital is unavailable, therefore, the proposal does not constitute an internal improvement prohibited by art. VIII, sec. 10, Wisconsin Constitution."Id. at 437-438.
[4]
If the Nusbaum court had been of the opinion that only a need and lack of private capital to meet such need has to be shown to take a program out of the category of internal improvement why did it stress *18 that the State funding "would not involve the state in public housing"? It was because of the fact that it was a separate, independent body, the Authority, that was going to carry on the program. If need and no private capital were what took a program out of the classification of internal improvement then it would not matter that the State became involved as a party in carrying on the work. Public housing or needed housing in general could be financed, built and run by the State. But the Nusbaum court did not say that. If that were properly read into the opinion, the court would not have distinguished Giessel, it would have said Giessel was wrong and overruled it. But the court did not do that. The reason seems obvious, the program was being operated by the independent Authority which the court stresses was not a State arm or agent but a public body corporate and politic.[7] It is the Authority that is going to carry on the program, not the State. The State's role is to merely help it get started. It is this limited role that the court held to be a proper governmental function and not violative of sec. 10, Art. VIII. The Authority was an entity set up to achieve a purpose the State "cannot achieve directly because of various constitutional limitations. ..." Id. at 425, cited more fully, supra. In the case before us, the bar is Article VIII, sec. 10 of the Wisconsin Constitution.
When this court has found that the thing to be constructed is itself a government function then the court has said the State may do so directly. Such constructions are then not mere internal improvements. *19 The court so held in State ex rel. LaFollette v. Reuter, 33 Wis. 2d 384, 403, 147 N.W.2d 304 (1966), where this court said:
"We conclude that matters pertaining to the abatement of water pollution are governmental functions of the State of Wisconsin and that water pollution prevention and abatement facilities are not works of internal improvement within the prohibition of sec. 10, Art. VIII Const."
No such statement has been made by this court with respect to housing, public or private.
The State is not powerless to encourage activities like housing development, the court in Nusbaum furnished the tools. The court approved the same method in Wisconsin Solid Waste Recycling Auth., 70 Wis. 2d at 491. This court said:
"Wisconsin has long recognized the doctrine that where an entity other than the state carries on the work of the state, the entity is independent and thus saves the state from a violation of the internal improvement prohibition.

"There is no doubt here that the Solid Waste Recycling Authority is an independent authority from the state, that it is neither an arm nor an agent of the state, and that its activities are to be undertaken as an independent entity, free to carry on its operations without being bound by the prohibition of art. VIII, sec. 10, Wisconsin Constitution, barring state participation in works of internal improvement.
"The appropriation of $500,000 to the Solid Waste Recycling Authority for initial operating costs does not change this conclusion, any more than in Nusbaum, where a similar appropriation was *20 made. A different case might be presented if this appropriation were made for the purpose of directly aiding the Authority to build some type of recycling facility."
We conclude that authority given to the Department of Development in the legislation before us is inconsistent with the decisions of this court in Giessel, Nusbaum and Wisconsin Solid Waste Recycling Authority and cannot be sustained.
Forestry has long been recognized as one of Wisconsin's great resources for recreation and wood products. However, after this court's opinion in State ex rel. Owen v. Donald, it was felt necessary to amend the ban section to provide that "the state may appropriate money for the purpose of acquiring, preserving and developing the forests of the state."
It would have been thought strange, to say the least, had the court said of all the amendments to Article VIII, sec. 10 to facilitate travel and transport, such as the amendments permitting State involvement in highways, airports and port facilities that: "These amendments are not necessary. The real purpose of these expenditures is not to build roads, highways, port facilities or airports. The real public purpose is to allow people to travel and transport their goods which is essential to the welfare of the population and essential for the growth of the state." Quite obviously, that would have been an absurd position for the court to take.
Yet, that is the very type of reasoning we are asked to follow now in saying that in becoming directly involved in the building of private housing for "low and middle income persons," the State is not involved in housing but in providing a solution to the *21 need for such housing by low and middle income persons.
The problem with that reasoning is that this court in Giessel said that housing for veterans in spite of the great need, lack of facilities and emergency in housing for returning World War II veterans and lack of private capital to build the facilities to meet the need was still clearly an "internal improvement" and was prohibited under the internal improvements ban. Both the legislature and the electorate responded by amending Article VIII, sec. 10 to allow "the acquisition, improvement or construction of veteran's housing."
We may not ignore the plain wording of the State Constitution. Its words are clear: "The state shall never contract any debt for works of internal improvement, or be a party to such works...." It has been interpreted by this court many times. The six amendments to this provision against "internal improvements" show that the legislature and in turn the voters of this state have not been adverse to changing the state's role when the collective perception is that change is needed.
If the majority of the legislature is of the opinion that the state should directly engage in financing housing rather than acting through an independent authority, which method has previously been accepted by this court as not violating the Constitution, then it may submit a referendum to the voters to amend the internal improvements provision or to repeal the ban on internal improvements entirely.
As has often been said, it is this court's function to interpret the State Constitution, not to amend it. The power to amend the Constitution lies only with the legislature and the people of Wisconsin.
*22 By the Court.Rights declared. Section 560.04(3), Stats., (1985), is unconstitutional as it violates Article VIII, sec. 10, of the Wisconsin Constitution.
NOTES
[1] Section 560.04(3), Stats., as amended by 1985 Wisconsin Act 29, sec. 2243m provides:

"560.04 Community Development. ... (3) HOUSING ASSISTANCE. The department may make, with or without interest or security, loans from the appropriation made under sec. 20.143(3)(v) for development or construction of low-and moderateincome housing projects. No loan may be made unless the secretary may reasonably anticipate permanent financing of the project. The department shall request the building commission to contract revenue obligations to fund loans under this subsection. The building commission shall, at the request of the department, contract under subch. II of ch. 18 $1,000,000 in revenue obligations, excluding obligations issued to refund outstanding revenue obligations issued under this subsection, for the purpose of funding loans under this subsection. The department may, under sec. 18.56(5) and (9) (j), deposit in a separate and distinct fund outside the state treasury all revenues received in the repayment of loans, funded from the appropriation under sec. 20.143 (3) (v), made under this subsection and any other revenues dedicated to it by the department. The department may pledge revenues received or to be received by this fund to secure revenue obligations issued to fund loans under this subsection. The department shall have all other powers necessary and convenient to distribute the proceeds of the revenue obligations and loan repayments in accordance with subch. II of ch. 18."
[2] The full text now reads:

"SECTION 10. The state shall never contract any debt for works of internal improvement, or be a party in carrying on such works; but whenever grants of land or other property shall have been made to the state, especially dedicated by the grant to particular works of internal improvement, the state may carry on such particular works and shall devote thereto the avails of such grants, and may pledge or appropriate the revenues derived from such works in aid of their completion. Provided, that the state may appropriate money in the treasury or to be thereafter raised by taxation for the construction or improvement of public highways or the development, improvement and construction of airports or other aeronautical projects or the acquisition, improvement or construction of veterans' housing or the improvement of port facilities. Provided, that the state may appropriate moneys for the purpose of acquiring, preserving and developing the forests of the state; but of the moneys appropriated under the authority of this section in any one year an amount not to exced two-tenths of one mill of the taxable property of the state as determined by the last preceding state assessment may be raised by a tax on property."
[3] State ex rel. Owen v. Donald, 160 Wis. 21, 151 N.W. 331 (1915) (forests); State ex rel. Martin v. Giessel, 252 Wis. 363, 31 N.W. 626 (1948) (veterans housing).
[4] 1908: construction of public highways; 1924: acquire, preserve and develop forests; 1945: development, improvement and construction of airports; 1949: acquisition, improvement or construction of veterans housing; 1960: improvement of port facilities; 1968: forest preservation provision expanded.
[5] Because both the Department or the Authority are established by the State, interest on such bonds is "tax exempt" or excluded from gross income for federal tax purposes. The interest rate is therefore lower on such bonds than on taxable obligations and the lower rate is passed through to the borrowers who then can construct housing at a lower cost. This should result in lower rents.
[6] We note that the Amicus brief of the Wisconsin Housing and Economic Development Authority challenges this concession by the Respondent. WHEDA specifically points to a provision in the legislation that loans may be made "with or without interest" and "with or without security."
[7] For a discussion of the use of "dummy" corporations previously used to accomplish similar objectives and the history of their demise, see Nusbaum, 59 Wis. at 425-427.