KEITH JOHNSON, Acting General Counsel State of WisconsinInvestment Board
You ask two questions relating to the authority of the State of Wisconsin Investment Board (SWIB) to use nonrecourse debt in making real estate investments for the fixed retirement investment trust (fixed trust) of the Wisconsin Retirement System. In connection with your questions, you have advised that use of a partnership is not in issue in that section 620.22, Stats., incorporated in the SWIB grant of investment authority at section 25.17 (3)(a), allows investment "as a participant in a partnership." This opinion thus does not treat or concern whether, or the extent to which, a partnership is used to engage in the nonrecourse investment.
First, you ask whether the SWIB may incur nonrecourse debt:
 By taking out a non-recourse loan secured by real estate owned by the Board in its name alone, or owned by a partnership in which the Board is a general or limited partner.
It is my opinion that the SWIB lacks the statutory authority to borrow money and secure that debt utilizing real estate that is owned by it as an investment of the fixed trust.
Administrative agencies, created by the Legislature, such as the SWIB, have only those powers expressly conferred or necessarily implied by the statutes under which they operate. Any reasonable doubt as to the existence of implied power should be resolved against the exercise of such power. Kimberly-Clark Corp.v. Public Service Comm., 110 Wis.2d 455, 461-62, *Page 190 329 N.W.2d 143 (1983); State (Dept. of Admin.) v. ILHR Dept.,77 Wis.2d 126, 136, 252 N.W.2d 353 (1977).
The statutory authority granted to the SWIB to deal with fixed trust monies is to invest those monies in stated investments. Sections 25.17 (2)(a), (3)(a), (b), (bh), (dg) and (dm) and 25.18
(1) authorize investing in or managing specifically stated areas of investments. Section 25.17 also authorizes investments in certain general categories in the words:
Powers and duties of board. . . . The board shall:
. . . .
 (3)(a) Invest any of the following funds: 1. fixed retirement investment trust; 2. state life fund; 3. veterans trust fund, in loans, securities and any other investments authorized by s. 620.22, and in bonds or other evidences of indebtedness or preferred stock of companies engaged in the finance business whether as direct lenders or as holding companies owning subsidiaries engaged in the finance business. Investments permitted by sub. (4) are permitted investments under this subsection.
. . . .
 (4) Invest the funds of the fixed retirement investment trust in loans, securities or investments in addition to those permitted by any other statute including investments in corporations which are in the venture capital stage. The aggregate of the loans, securities and investments made under this subsection shall not exceed 15% of the admitted assets of that trust. Investments in corporations which are in the venture capital stage shall not exceed 2% of the admitted assets of that trust.
Section 620.22 (permitted investments for insurance companies), referred to in section 25.17 (3)(a), specifically sets forth classes of investments but concludes at subsections (8) and (9) with the language: *Page 191 
 (8) Such other investments as the commissioner authorizes by rule; and
 (9) Investments not otherwise permitted by this section, and not specifically prohibited by statute, to the extent of not more than 5% of the first $500,000,000 of the insurer's assets plus 10% of the insurer's assets exceeding $500,000,000.
The duty and grant of authority is consistently described as "invest" or acquire "investments." In construing a statute, the first rule to apply is "that the primary source of construction is the language of the statute." Kimberly-Clark Corp.,110 Wis.2d at 462. "The ordinary and accepted meaning of a word can be established by reference to a recognized dictionary . . . ." DNRv. Wisconsin Power Light Co., 108 Wis.2d 403, 408,321 N.W.2d 286 (1982).
Webster's Ninth New Collegiate Dictionary 636, 637 (1984) defines the words "invest" and "investment" in part as follows:
 invest . . . to commit (money) in order to earn a financial return.
 investment . . . the outlay of money usually for income or profit: capital outlay; also: the sum invested or the property purchased.
What is consistent in the statutes concerned and the dictionary definition is the commitment or outlay of money. I see nothing to indicate any intent in the statute to authorize the SWIB to borrow money for investment purposes. That is not to say that the authority to borrow money to maintain and repair owned real estate may not be subsumed in the authority granted under section25.18 (1)(f). That question is not, however, within the intent of the question you have asked. The placing of debt on real estate in the situation presented, is not for repair or maintenance but for leveraging purposes, "to improve returns on an existing investment." See March 30, 1989 Memorandum from Keith Johnson to Paul Fanfera at 3. *Page 192 
While I make no judgment on, and do not disparage, the borrowing of money by the SWIB as a technique to increase the rate of return on owned real estate, I find no such authority granted in the statutes. Where the term "loan" is used in section25.17 or 620.22, the context indicates that that capital outlay is intended rather than the borrowing of money to leverage investments.
Nor do I find a basis for necessary implication of authority to borrow money for leverage purposes, given the wide range of investment vehicles available under the existing specific and general authorities of sections 25.17 and 620.22. It is, therefore, my opinion that the SWIB lacks the authority to borrow money for leverage purposes and secure such loan utilizing owned real estate.
Your second question asks whether the SWIB may incur nonrecourse debt:
 By acquiring, either in the Board's name or in the name of a partnership in which the Board is a general or limited partner, real estate which is subject to nonrecourse debt.
It is my opinion that the SWIB may acquire real estate subject to nonrecourse debt in investing the fixed trust under the broad authority of sections 25.17 (4) and 620.22 (9). The types of investments under these two subsections is limited only by the prudent expert rule, section 25.15 (2)
As the Wisconsin Legislative Council staff stated in Staff Brief 82-6 at 12:
 These statutes also grant the Investment Board unlimited discretion to invest a portion of the fixed retirement investment trust funds, within the constraints of the prudent person rule. Subsections (3) and (4) of s. 25.17, Stats., provide that funds may be invested in loans, securities or investments in addition to those permitted by any other section of the statutes, in an amount not to exceed 15% of the admitted assets of the trust. This section of the statutes, *Page 193 
as of April 30, 1982, allows the Board to invest approximately $790 million without restriction. Section 620.22 (9), Stats., authorizes the Board to place funds in investments not otherwise permitted under s. 620.22, Stats., and not specifically prohibited by any other statute, to the extent of not more than 5% of the first $500 million of the fund plus 10% of the fund's assets exceeding $500 million. This section, as of April 30, 1982, authorizes the Board to invest approximately $500 million without restriction. Sections 25.17 (3) and (4) and 620.22 (9), Stats., appear to be cumulative and together authorize the investment of approximately $1.3 billion without specific restraints.
The SWIB thus has the authority to acquire encumbered real estate under sections 25.17 (4) and 620.22 (9), where the debt is assumed without recourse. Having found such statutory authority, I must now determine whether it is limited or precluded by the Wisconsin Constitution.
Article VIII, section 3 of the Wisconsin Constitution provides that "the credit of the state shall never be given, or loaned, in aid of any individual, association or corporation." Similarly, article VIII, section 4 of the Wisconsin Constitution states that "[t]he state shall never contract any public debt except in the cases and manner herein provided." In interpreting these sections, the Wisconsin Supreme Court has held "that no state debt or pledge of state credit exists unless there is an obligation which is legally enforceable against the state."Wisconsin Solid Waste Recycling Auth. v. Earl, 70 Wis.2d 464,482, 235 N.W.2d 648 (1975). Since the existing debt assumed by the SWIB would be without recourse, there is no state debt or pledge of state credit created.
Article VIII, section 10 of the Wisconsin Constitution states in part that "[t]he state shall never contract any debt for works of internal improvement, or be a party in carrying on such works" (except in the areas of public highways, forests, airports, veterans housing and port facilities specifically allowed by such section). The construction of housing has been determined to be an *Page 194 
internal improvement. Development Dept. v. Bldg. Comm'n,139 Wis.2d 1, 7, 406 N.W.2d 728 (1987). It therefore appears that the courts would also consider commercial buildings to be internal improvements. Purchase of real estate subject to nonrecourse debt does not violate the prohibition against contracting debt for works of internal improvement since the state has not guaranteed payment in the event of a default. Development Dept.,139 Wis.2d at 12. We therefore need concern ourselves only with the determination as to whether the SWIB is (1) "the state" and (2) "a party in carrying on such works."
As the supreme court stated in Development Dept.,139 Wis.2d at 12-13:
 The use of the conjunction "or" in the phrase, "The State shall never contract any debt for works of internal improvement or be a party in carrying on such works," shows that the phrase "be a party in carrying on such works" has a vitality of its own. The antipathy of the state's founders against the state entering the quagmire of "internal improvements" extended to prohibiting the state from even being a party to such works whether or not any debt was contracted. The Department of Development, a state agency, using the state machinery to issue bonds, being involved in planning or approving plans for housing and eligibility for loans and then lending the money and collecting it, bringing whatever legal action might be necessary to collect from borrowers who default to pay bond holders when the whole purpose is to see to it that housing is built is clearly being "a party in carrying on such works." Here it is plain the State is a very important, if not indispensable party in bringing about these "works of internal improvement." This is true even though the benefits accrue to the private borrowers who continue to be the owners of these "works of internal improvement." It is not necessary that the State be *Page 195 
or become the actual owner of the housing in order to "be a party in carrying on such works," i.e., housing.
(Emphasis supplied.)
The Legislature can establish a corporate body independent of the state to do works of internal improvement that are prohibited to the state.
 Wisconsin has long recognized the doctrine that where an entity other than the state carries on the work of the state, the entity is independent and thus saves the state from a violation of the internal improvement prohibition.
 There is no doubt here that the Solid Waste Recycling Authority is an independent authority from the state, that it is neither an arm nor an agent of the state, and that its activities are to be undertaken as an independent entity, free to carry on its operations without being bound by the prohibition of an. VIII, sec. 10, Wisconsin Constitution, barring state participation in works of internal improvement.
Wisconsin Solid Waste Recycling Auth., 70 Wis.2d at 491
(emphasis supplied). See also State ex rel. Warren v. Nusbaum,59 Wis.2d 391, 424-25, 208 N.W.2d 780 (1973) (Wisconsin Housing and Economic Development Authority).
It appears that the SWIB is a state agency similar to the Department of Development rather than an independent authority such as the Solid Waste Recycling Authority. The SWIB is created by section 15.76, part of subchapter III of chapter 15, entitled Independent Agencies. Section 15.01 defines "Board" and "independent agency" as follows:
15.01 Definitions. In this chapter:
 (1) "Board" means a part-time body functioning as the policy-making unit for a department or independent agency
or a part-time body with policy-making or quasi-judicial powers and includes the state emergency response commission.
 . . . . *Page 196 
 (9) "Independent agency" means an administrative agency within the executive branch created under subch. III.
Since the Legislature has specifically defined the SWIB to be an "administrative agency within the executive branch," there is no basis to consider such agency an independent authority, separate from the state. Actions taken by the SWIB are actions of the state for article VIII, section 10 of the Wisconsin Constitution purposes.
I do not, however, consider the SWIB to be a party in carrying on works of internal improvement since the purpose is investment of the fixed trust rather than the construction of buildings.
 If a law is predominately public in its aim, it will not be held to violate the internal improvements provision, in spite of the fact that the state carries on internal improvements incident to the main public purpose of the law. This was recognized in Appeal of Van Dyke, where a taxpayer had challenged the validity of an unemployment relief income tax, which partially reimbursed counties and cities for the labor cost of public works. The taxpayer argued that such a state tax was unconstitutional, since it made the state a party to works of internal improvement. But the court did not agree:
 ". . . the primary purpose of the state was not to become a party to carrying on works of internal improvement, but to reimburse the counties and cities which had made work simply for the purpose of providing employment to the unemployed."
 The primary or dominant purpose approach of Van Dyke was relied upon by this court in the more recent case of State ex rel. La Follette v. Reuter. In that case the court stated that prohibited works of internal improvement did not include those works which had the dominant purpose of preserving public health. *Page 197 
Wisconsin Solid Waste Recycling Auth., 70 Wis.2d at 492
(footnotes omitted).
The state can have a limited role in a work of internal improvement pursuant to a proper governmental function and not violate article VIII, section 10 of the Wisconsin Constitution.Development Dept., 139 Wis.2d at 18. Building construction resulting from mortgage investments or purchases by the SWIB are only incidental to the proper governmental function of investing the fixed trust and does not violate article VIII, section 10 of the Wisconsin Constitution.
DJH:WMS *Page 198